[No. 16878. *En Banc.* September 22, 1922.]

B. F. PRATT, *Appellant,* v. HEDWIG F. E. PRATT, *Respondent.*[1]

LIMITATION OF ACTIONS (17, 17-1)—MORTGAGES (157)—DEBTS NOT EVIDENCED BY WRITING. An action to reform a deed and foreclose it as a mortgage, which was given as security for a debt not evidenced by a written contract, is barred when the debt is barred, and must therefore be commenced within the three years limited by Rem. Comp. Stat., § 159, for actions upon contracts not in writing and which do not arise out of a written instrument (FULLERTON, TOLMAN, MITCHELL, and HOLCOMB, JJ., dissenting).

Appeal from a judgment of the superior court for Pierce county, Fletcher, J., entered December 20, 1920, upon sustaining a demurrer to the complaint, dismissing an action to foreclose a mortgage. Affirmed.

*Gordon & Nolte,* for appellant.

*Anthony M. Arntson,* for respondent.

MACKINTOSH, J.—The appellant was the father of Foss E. Pratt, whose widow and executrix is the re-

[1]Reported in 209 Pac. 535.

spondent in this action. Prior to June, 1905, appellant loaned to his son the sum of $2,600. In 1906, he made a further loan of $300, and on June 17, 1907, another loan of $2,000, and on September 16, 1908, the appellant had due from his son the sum of $4,903, and on that date, for the purpose of securing payment of this debt, property in the city of Tacoma was transferred to the appellant by deed. Between April, 1909, and March 15, 1916, the son made payments amounting to $1,000, which left a balance of $3,903 due on the last named date. This action was begun June 18, 1919, for the purpose of having the deed above referred to declared a mortgage and foreclosed. A demurrer was interposed to the complaint, stating several grounds, only one of which we will notice—that the action was not commenced in the time limited by law.

Upon a reargument of this case before this court, appellant seeks to have the second amended complaint interpreted as one in the nature of an action to quiet title, but this cannot be done, the plain allegations clearly pleaded are those of an action to foreclose a mortgage, and as such we must and will consider and dispose of it.

Section 159 of Rem. Compiled Statutes provides that actions upon contracts not in writing and which do not arise out of written instruments are barred unless brought within three years from the time the cause of action accrued. It is the position of the respondent that recovery upon the debt in this case, the debt not having been evidenced by writing, and not arising out of a written instrument, was barred three years from March 15, 1916, and this action, having been begun subsequently thereto, cannot be maintained, and that the debt, having been barred, the right to foreclose the mortgage given as security therefor is also barred. In

other words, that the mortgage itself was not a written obligation independent of the debt for which it was given as security. Under the laws of this state a mortgage creates nothing more than a lien in support of the debt which it is given to secure. *Gleason v. Hawkins,* 32 Wash. 464, 73 Pac. 533. In *George v. Butler,* 26 Wash. 456, 67 Pac. 263, 90 Am. St. 756, 57 L. R. A. 396, we held that:

"It must be considered . . . at the outset of the consideration of this subject, as settled by this court, that, when a debt secured by a mortgage is barred by the statute of limitations, the mortgage is also barred."

On page 467 of the same volume it is further stated:

"It is also suggested that the mortgage contains a covenant to pay the whole debt. The covenant is, however, limited to payment according to the terms of the notes. In this state a mortgage is a mere lien upon the land to secure the payment of the debt. The debt secured in this case was evidenced by certain promissory notes or obligations described in the mortgage, which severally matured at different times. Each note was the foundation for a separate cause of action, and suit might have been brought upon each note as it matured without foreclosure, or the mortgage might have been foreclosed as to each note at any time after its maturity. . . . We think the rule of limitations must be held to apply to each note as it matures. The mortgage being a mere incident to the note, and its only purpose being to secure the same, it has fulfilled its purpose, as far as the debt represented by the note is concerned, when there is no longer a right of action upon the note."

This principle also finds support in the case of *Damon v. Leque,* 17 Wash. 573, 50 Pac. 485, 61 Am. St. 927. Nor is there anything in conflict with it contained in the case of *Krutz v. Gardner,* 25 Wash. 396, 35 Pac. 771. In that case we said:

"Of course, the liability of a mortgagor upon a mortgage arises out of a written agreement, and hence, under the section of the Code last above mentioned [Bal. § 4798], an action to enforce it must be commenced within six years after condition broken."

This expression, upon which the appellant relies, is followed, however, by the statement:

"The debt to secure which appellant's mortgage was given became due and payable on March 1, 1894, and therefore the appellant's right to foreclose was not barred until March 1, 1900."

Although the first part of the opinion quoted might indicate that the court was holding that the foreclosure of a mortgage was to be determined by the date thereof, yet the subsequent portion of the opinion quoted shows that what the court had in mind was the date of the debt upon which the mortgage was founded, and that case, viewed upon its facts, is not authority for any proposition other than that we have here stated.

This position is further fortified by our opinion in *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733, where it was held that a bond given by a county treasurer to secure the faithful performance of his duty did not constitute a written contract within the meaning of the statute of limitations, but that the county treasurer was liable when he neglected or refused to perform his duties, and the cause of action accrued at that date, and that the bond was merely collateral security for the performance of those duties, in that respect being of the same nature as mortgages have been by this court decided to be. In the course of that opinion the court said:

"In states where a mortgage conveys the fee to the mortgagee, an action upon the mortgage is not barred, though the debt may be; but whereas in this state the mortgage creates a lien only, and is an incident to, and

collateral security for, the debt, when the principal (the debt) is barred, no action can be maintained upon the mortgage itself (the collateral security for the debt).''

In the case of *Fitzgerald v. Flannagan,* 125 N. W. (Iowa) 995, the supreme court of Iowa said:

''In this state it is well settled that a mortgage conveys no estate or interest in the land. Its effect is to create a mere lien. It is incident to the debt it secures, and when the debt ceases to exist, or by operation of the statute ceases to be enforceable at law, the mortgage ceases to be enforceable in equity. . . . We can conceive no condition whereby, under the law as settled by our statutes and precedents, a right to foreclose and enforce the mortgage can exist after the lapse of the statutory period without a revivor of the debt which it secures.''

The supreme court of Colorado in *McGovney v. Gwillim,* 65 Pac. (Colo.) 346, in a case in which a deed, absolute in form, was held in fact to be a mortgage, stated that the action was barred for the reason that the suit upon the debt was barred by the statute of limitations. The court said:

''It appears to be generally held by the weight of authority that, in the absence of any controlling statute, in states where, like ours, the distinction between actions at law and suits in equity is done away with, and where there is but one form of action, whether the cause of action be at law or in equity; where there is no distinction between simple contracts and specialties; where the mortgage or deed of trust is security only, and does not give the mortgagee or cestui que trust the present right of possession in default of payment; and where the debt evidenced by the note, if there be one, is the principal thing, and the mortgage or deed of trust is a mere incident to it,—that an action to foreclose is barred when the note is barred; that the statute of limitations applies equally to both. In Colorado whether the form of security be a mortgage or a deed

of trust, the debt is the principal thing. The security is a mere incident. . . . A mortgagee has a lien merely. . . . An action to foreclose a mortgage or deed of trust is simply, in effect, an action to collect a debt, to secure the payment of which was the sole purpose of its execution; and, when the statute after the lapse of a certain time bars an action upon the debt for its collection, we believe it includes all actions seeking to effectuate that purpose.''

There is no need of multiplying authorities upon this question, for it seems to be the universal rule in all those jurisdictions which hold that the mortgage creates nothing but a lien that an action upon the mortgage is barred when the statute of limitations has run against the debt which the mortgage was given to secure. The rule being such, it follows that the demurrer to the complaint in this action was properly sustained, and the judgment is affirmed.

PARKER, C. J., BRIDGES, MAIN, and HOVEY, JJ., concur.

FULLERTON, J. (dissenting)—To an understanding of the questions decided in the foregoing opinion, I think a more full statement of the facts than is made therein will be helpful. As indicated in the opinion, the cause is here upon an appeal from a judgment in favor of the defendant, entered in the court below after a demurrer had been sustained to the plaintiff's complaint. The facts, therefore, are found in the complaint. In substance they are these: The appellant and one Foss E. Pratt were father and son. In the midsummer of 1900, the younger Pratt, then desirous of taking up the study of medicine and surgery at a medical and surgical college, and being himself without means, solicited his father to pay his expenses at such a college until he should graduate therefrom, orally promising and agreeing, in case the father paid such expenses, to repay the same within ten years after his

graduation. The father agreed to the proposal, and between that time and the son's graduation on June 28, 1905, paid the son's expenses at a medical and surgical college, advancing in that behalf the sum of $2,603. After his graduation, the son took up his residence at Tacoma, in this state. Thereafter, and on November 6, 1906, the father, at the son's solicitation, made him a further advancement of $300, to pay upon the purchase price of two certain lots of land situated in the city of Tacoma which the son had contracted to purchase. On June 17, 1908, the father, again at the son's solicitation, made a further advancement of $2,000, to pay upon the purchase price of two certain other lots in the city named which the son also had contracted to purchase. The title to the last mentioned lots was then in one James A. Enbody. On September 16, 1908, the son, having paid in full the purchase price, caused the lots to be conveyed by Enbody to his father as security for the advancements made, which then totaled, without interest, the sum of $4,903. Between the date of the deed and March 16, 1916, the son repaid from time to time to the father, of the advancements, sums totaling $1,000, leaving a balance due on the date last given of $3,903. The son died on October 21, 1918, leaving a will in which he named his widow, Hedwig Freda Elizabeth Pratt, the respondent in this action, his sole devisee and legatee, naming her also as the executrix of his will.

On June 18, 1919, the father began the present action against the widow of the deceased son, both in her individual and representative capacity, asking that the deed be treated as a mortgage for the purpose of securing the sums of money advanced, that a decree of foreclosure be entered for the same, and that the property be sold under the decree as property is usually

sold under foreclosure proceedings. He expressly
waived any claim against the widow individually or in
her representative capacity, and expressly waived any
claim for a deficiency judgment. There was a prayer
also for general equitable relief.

It will thus be seen that the majority decide these
several propositions, namely: (1) that the deed from
Enbody to the father, since it was given as security for
a debt, did not pass the legal title to the property from
the grantor to the grantee; (2) that the debt from the
son to the father was, at the time of the commencement
of the action, barred by the statute of limitations; and
(3) that the deed being security only, is not different
from the ordinary statutory mortgage, or a mortgage
with a defeasance expressed therein, and any right of
action founded thereon is barred when the debt which
it is given to secure is barred.

There are cases from other jurisdictions which hold
with the first of these propositions. One such a case
is cited in the majority opinion, but I cannot think
these represent the weight of judicial opinion, nor do
I think they are among the better considered cases. I
shall not review the cases here. The curious will find
them collected in the selected cases reports, the digests
to which will furnish a ready reference. Since, how-
ever, the majority cite a case from Iowa as sustaining
their conclusion, I will mention the case of *Lindberg v.
Thomas,* 137 Iowa 48, 114 N. W. 562, where is found
the following:

"In some of the States the conveyance of land by
deed, though absolute in form, as security, is construed
to be a mortgage only, and not to pass the fee, but in
this State the legal title passes, and the borrower, in
order to protect himself, must exercise the right of
redemption within the period of the statute of limita-
tions. *Richards v. Crawford,* 50 Iowa 494."

But the case cited in the majority opinion and the here cited case are not in conflict. In the one case the court was speaking of a mortgage proper, and in the other of a deed given as security.

I am more concerned with our own cases of *Snyder v. Parker,* 19 Wash. 276, 53 Pac. 59, 67 Am. St. 726, and *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031. In the first of these it was held that an action of ejectment could not be maintained on a deed absolute in form given to secure a debt, the reason stated being that such a deed did not pass the legal title from the grantor to the grantee. In the second it was held that, where two such deeds were given to secure debts to different parties, an action could not be maintained by the holder of the first against the holder of the second to set aside the later deed as a cloud upon the title of the first; the reason given likewise being that the deed did not pass the legal title. While I think these cases were rightly decided, I think the reasons given for the decisions were wrong. The defense in each instance was equitable, and in the application of· equitable principles the court could well say that it would be inequitable to allow the holders of the instruments to give them an effect not intended by any of the parties thereto. But this principle was applicable whether the deeds did or did not pass the legal title, and it was unnecessary to rest the conclusion on the ground that the legal title did not so pass.

The incongruity of saying that a deed, absolute in form, made by an owner of property to another does not pass the legal title to the property from the owner to that other, is, of course, self-evident. But aside from this, I think the facts of the present case completely demonstrate the fallacy of the conclusion. If the legal title to the property in question did not pass

by the deed from Enbody to the elder Pratt it is perti-
nent to inquire, in whom does the legal title now rest.
This question, on such an assumption, admits of but
one answer—the title is still in Enbody. But mani-
festly this conclusion is not only contrary to the legal
effect usually accorded absolute conveyances, but, with
respect to the particular transaction, is contrary to
the purpose and intent of the parties. Enbody clearly
had no other purpose than to convey the title, and it
is equally clear that both the father and son intended
that the father should take the title to the property and
hold it as security for the son's debt to him. The legal
effect of the instrument and the intent of the parties
coinciding, it is to me a strange doctrine to say that
the instrument has an effect contrary to both.

As to the second proposition, it may be that the right
to sue upon the debt as a debt is barred. But I do not
understand that this is what the appellant is attempt-
ing. His complaint in effect is that he holds the legal
title to real property in which both he and the respond-
ent have a beneficial interest, and he but seeks to have
these interests adjudicated and separated. Such a
suit, since it is founded on a written instrument, is not
barred short of the six-year statute of limitation (see
Rem. Comp. Stat., § 157; *Caldwell v. Hurley,* 41 Wash.
296, 83 Pac. 318; *Lindblom v. Johnston,* 92 Wash. 171,
158 Pac. 972; *Pioneer Mining & Ditch Co. v. Davidson,*
111 Wash. 262, 190 Pac. 242), and possibly not short of
the period of the statutes relating to adverse posses-
sion.

The third of the propositions is, to my mind, also
untenable. A deed given as security, since it passes
the legal title to the property, is not to be likened to
an ordinary mortgage, either in its substance or in its
effect. An instrument of the latter sort expressly pro-

vides that it is security for a debt, and expressly provides that it shall become void if the obligation is paid. It is but ancillary to the debt, and is, of course, in virtue of its express conditions, satisfied when the debt which it secures is satisfied. There is, therefore, no incongruity in holding that it dies with the death of the debt. But a deed absolute is not an instrument of this sort. It is, in legal effect, what it purports to be, and can only be declared to be something else by a resort to a court of equity. When this is done, the court looks to the justice of the matter. If it finds that it was intended as security for a debt, it will direct a reconveyance on the payment of the debt. But it will not, unless all equitable principles are forgotten, listen to a grantor who asserts that he is entitled to a reconveyance of property conveyed to secure a debt, merely because the debt is barred from recovery at law by the statute of limitations. As was said in *Sturdivant v. McCorley*, 83 Ark. 278, 103 S. W. 732, 11 L. R. A. (N. S.) 825:

"But, though the statute of limitations has run on the debt, the title to the land remains in the grantee or his heirs. . . . As the deed is absolute in form without written defeasance, . . . the grantee or his heirs can recover the possession unless the defendant sets up the equitable defense that the deed was in equity. But, as before stated, when he does this, he will be met by the equitable principle that he who asks equity must do equity, and the court will interfere only on condition that the debt be treated as a valid lien on the land. In other words, the statute of limitations as to mortgages does not apply to equitable mortgages."

The holding of the majority, when reduced to its ultimate effect, is, of course, that the appellant has now no interest in the property in question. With this conclusion I cannot agree. I think he has title to

the property, valid in all respects, save only that it is subject to the respondent's right to redeem by paying the amount due upon his advancements.  I think, further, that the action instituted by him is timely and proper, and that the demurrer to his complaint should have been overruled rather than sustained.

TOLMAN, MITCHELL, and HOLCOMB, JJ., concur with FULLERTON, J.