IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HINDMAN CONSTRUCTION, INC., a Washington corporation, | No. 83802-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GREG BOOS, an individual, and LAI LAI CHAN, an individual, | |
| Respondents, | |
| WHATCOM EDUCATIONAL CREDIT UNION, a Washington non-profit banking institution, | |
| Defendant. | |

SMITH, A.C.J. — Hindman Construction contracted with Greg Boos and Lai Lai Chan in July 2018 for Hindman to renovate Boos's[1] home. Throughout the renovation, Boos suspected that Hindman was overcharging them and requested to see back-up receipts and invoices. Hindman did not provide any. After Hindman issued its final invoice, Boos refused to pay. Hindman then recorded a lien on Boos's house and sought to enforce it. Hindman sued to enforce the lien and for breach of contract, unjust enrichment, and recovery in quantum meruit. Boos brought successive motions for summary judgment seeking to dismiss

_____

[1] Following Boos and Chan's practice in their briefs, we refer to them collectively as "Boos."

Citations and pin cites are based on the Westlaw online version of the cited material.

Hindman's claims, which were granted, and Hindman appeals. Because material issues of fact exist as to the contract claim, we reverse dismissal of the contract claim and lien claim, but we affirm the dismissal of the equitable claims. We also reverse the award of attorney fees.

## FACTS

Hindman Construction and Greg Boos and Lai Lai Chan entered into a construction contract in July 2018 for Hindman to renovate Boos's home in Bellingham. Several provisions of the contract are relevant to this appeal.

### Article 4

Article 4 covers construction progress and final payments. It states:

> [T]he Owners shall not . . . occupy or use the Contractor's work until and unless the Contractor shall have been first provided the signed and written punch list, if any.

### Article 7

Article 7 concerns the owners' responsibilities, including when and how the owners can reoccupy the house. It states:

> OCCUPANCY: Owners shall not occupy nor be placed in possession nor will the Contractor deliver full or partial possession to the Owners until the building department of authority has approved the construction and issued an occupancy permit, and the Contractor has been paid in full, including all changes or additions ordered.

### Article 11

Article 11 governs changes to the contract and construction plans. These change requests are called change orders. It sets out how change orders are submitted and states that any additional charges will be added to the contract price. It also states:

All change requests will be submitted in writing upon individual request. Scanned transmissions are acceptable. Verbal requests for changes are binding under this contract. . . . Owners and Contractor may acknowledge one change order in writing after it has been verbally authorized. The additional charge will be added to the contract price.

All change orders shall be incorporated in, and become a part of the contract.

. . .

Change Orders may affect the completion date of the project.

## Article 13

Article 13 covers warranty. It provides:

Contractor warrants all work for a period of one-year following the date of substantial completion or date of occupancy, whichever occurs first. Contractor will determine date of completion.

Article 13 also provides that:

Any claim or cause of action arising out of the terms of the contract, including this warranty, must be filed in a court of competent jurisdiction within 14 days following expiration of the warranty period. Any cause of action based upon breach of contract or warranty, which is not so filed, is waived.

## Article 14

Article 14 addresses disputes and remedies. It states:

If a dispute should arise between the parties, the parties shall promptly meet and attempt in good faith to resolve it. Openness, calm and good faith are required of both parties. Any unsettled disputes between the parties shall be decided by an action filed in an appropriate court of jurisdiction unless the parties mutually agree otherwise. . . . In the event a dispute *or* lawsuit arises and one or both parties seek and receive the assistance of legal counsel, the prevailing party shall be paid its attorneys' fees and costs by the non-prevailing party.

Hindman began work on Boos's house in July 2018. Boos paid Hindman

according to the contract and paid most of the originally estimated price by

April 2019. Over the course of the renovation, Boos requested several change

3

orders to the original plans. The change orders were not well documented and Hindman did not request that the orders be requested or issued in writing. In lieu of issuing written change orders, Hindman issued monthly invoices to Boos that reflected work completed, including any work requested by change order.

Boos claimed they discovered in reviewing an invoice that Hindman had significantly overcharged for the work. Boos also asserted that Hindman refused to produce supporting receipts when asked about the invoice. According to Boos, the parties decided in April 2019 that Hindman would not charge Boos more than $58,415.27 for the work remaining.[2] Hindman disputes that it agreed to convert the contract into a "lump-sum project." Boos moved back into the house in June 2019 following a final inspection by the city of Bellingham.

Hindman subsequently issued an invoice in June for $87,590.68 and another, final invoice in August for $5,332.22. Boos did not pay. In December 2019, Hindman filed a lien against the property with the Whatcom County Auditor's office for the money owed. Boos claimed that after the project ended, they performed an accounting of all Hindman's invoices and discovered significant overcharges.

Discussions to resolve the payment dispute broke down in mid-2020 and Hindman initiated a lawsuit in August 2020 to foreclose its lien, claiming breach of contract, unjust enrichment, and seeking recovery in quantum meruit.

---

[2] In support of this contention, Boos provided an e-mail to Hindman stating as much. But Boos did not provide any response from Hindman confirming the arrangement and Hindman asserts that it at no time agreed to convert the parties' contract to a "fixed price" contract.

Hindman claimed that Boos "strung [him] along for many months" and abruptly ended negotiations. Boos denied all of Hindman's claims.

Boos moved for summary judgment, asserting that Hindman's claims were time barred by the claims limitation period set out in the contract. The trial court granted Boos's motion as to the contract claim, but denied it as to the other claims. Boos then moved for partial summary judgment to dismiss Hindman's equitable claims, which the trial court granted. Finally, Boos moved for summary judgment to dismiss Hindman's lien claim, asserting that it could not survive without the contract claim. The court granted the motion. Several months later, Boos moved for attorney fees and costs, which the court granted. Hindman appeals.[3]

## ANALYSIS

On appeal, Hindman assigns error to the trial court's grant of summary judgment as to Hindman's contract claim, equitable claims, and lien foreclosure claim. It also assigns error to the trial court's attorney fees award. We conclude that the trial court erred in granting summary judgment as to the contract claim, but did not err in granting summary judgment as to the equitable claims. Because the lien foreclosure claim is inextricably intertwined with the contract claim, we conclude that summary judgment on the lien claim was premature.

---

[3] The final order Hindman appeals, the stipulation and order of dismissal, entered April 15, 2022, is not designated in the clerk's papers as required by RAP 9.6 and is therefore not properly before this court. But each of the orders granting or denying summary judgment is included in the clerk's papers and the court can still reach the issues appealed.

Finally, as neither party has yet prevailed, we conclude that an award of attorney fees is premature.

Standard of Review

We review orders granting summary judgment de novo and conduct the same inquiry as the trial court, considering the facts and all reasonable inferences in the light most favorable to the nonmoving party. Lakey v. Puget Sound Energy, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). A "material fact" is one on which the outcome of the litigation depends in whole or in part. Boguch v. Landover Corp., 153 Wn. App. 595, 608, 224 P.3d 795 (2009). And " '[a] genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation.' " Ehrhart v. King County, 195 Wn.2d 388, 409, 460 P.3d 612 (2020) (quoting Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011)).

When the defendant is the party moving for summary judgment, the defendant bears the initial burden of demonstrating an absence of a genuine issue of material fact. Burton v. Twin Commander Aircraft LLC, 171 Wn.2d 204, 222, 254 P.3d 778 (2011). If the defendant succeeds in making this initial showing, the burden then shifts to the plaintiff. Burton, 171 Wn.2d at 222-23. "The defendant's motion will be granted if the plaintiff fails to present evidence 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " Kosovan v. Omni

Ins. Co., 19 Wn. App. 2d 668, 680, 496 P.3d 347 (2021) (some internal quotation marks omitted) (quoting Burton, 171 Wn.2d at 223).

1. Dismissal of Contract Claim

We are presented with four issues concerning Hindman's breach of contract claim. First, whether the statute of limitations in article 13 of the contract applies to all claims arising out of the contract or solely to warranty claims. Second, whether the COVID-19[4] pandemic is grounds to determine that the claims limitation period should be equitably tolled. Third, whether the claim limitation period is unconscionable and, therefore, unenforceable under Tadych v. Noble Ridge Construction, Inc., No. 100049-9 (Wash. Oct. 27, 2022), https://www.courts. wa.gov/opinions/pdf/1000499.pdf. And fourth, if the limitation is not unconscionable, whether an issue of material fact exists concerning when the statute of limitation is triggered. We conclude the trial court correctly decided that article 13's claim limitation period applies to all claims arising out of the contract, that article 13 should not be equitably tolled, that article 13 is not unconscionable, and that the trial court erroneously made factual determinations on summary judgment as to when the statute of limitations was triggered.

a. *Enforceability of Article 13's One-Year Claim Period*

Hindman alleges that the statute of limitations period applies only to warranty claims because the limitations clause appears under article 13, entitled

---

[4] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," a severe, highly contagious respiratory illness that quickly spread throughout the world after being discovered in December 2019.

"Warranty", and because there is a separate article of the contract which governs disputes. It asserts that the section headers that describe these articles should be given authoritative weight in determining the scope of the clause and that the default statutory statute of limitations period of six years applies to its claim. Boos maintains that because the limitations clause distinguishes between contract claims and warranty claims and provides that both are subject to the limitations period, it is immaterial that the clause appears under the article addressing warranty. We conclude that the limitations period applies to Hindman's breach of contract claim.

"Contract interpretation is a question of law that we review de novo." Kiona Park Estates v. Dehls, 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021). "The purpose of contract interpretation is to determine the parties' intent." Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). "Washington courts follow the context rule of contract interpretation, which allows a court, while viewing the contract as a whole, to consider extrinsic evidence to determine the parties' intent." Kiona Park Estates, 18 Wn. App. 2d at 335. Words in a contract are generally given their ordinary, usual, and popular meaning. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005). "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective." Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 840, 271 P.3d 850 (2012). Therefore, "[w]here one construction would make a contract unreasonable, and another, equally consistent with its language, would

8

make it reasonable, the latter more rational construction must prevail." Byrne v.

Ackerlund, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987).

Article 13's claim limitation clause reads as follows:

Any claim or cause of action arising out of the terms of the contract, including this warranty, must be filed in a court of competent jurisdiction within 14 days following expiration of the warranty period. Any cause of action based upon breach of contract or warranty, which is not so filed, is waived.

Regarding the warranty period, article 13 provides

[c]ontractor warrants all work for a period of one-year following the date of substantial completion or date of occupancy, whichever occurs first. Contractor will determine date of completion.

Here, Hindman argues that the section header of article 13, "Warranty,"

weighs in favor of limiting the paragraphs that follow to only the warranty

context.[5] Hindman also claims that article 13 does not address generally

applicable claim requirements. But the plain language of the paragraph says

otherwise. The paragraph states that the limitation period applies to "[a]ny claim

or cause of action arising out of the terms of the contract, *including* this

warranty." (Emphasis added). The clause specifically contemplates actions

"based upon breach of contract *or* warranty." (Emphasis added). Contrary to

Hindman's assertions, the clause was not drafted to apply solely to warranty

---

[5] We note, too, that Hindman asserts in a separate section of its briefing that a section of article 4, entitled "Progress and Final Payments," should be read into article 7, entitled "Occupancy," and should impose additional occupancy requirements on the parties. But this argument contradicts Hindman's later assertion that article 13 must be read separately from other terms of the contract. Hindman cannot have it both ways.

claims; to read it otherwise would change the plain meaning of the words on the page.

Hindman relies on Diamond B v. Granite Falls School District, 117 Wn. App. 157, 70 P.3d 966 (2003), to assert that section headings must be given effect concerning the language that falls below them. Hindman asserts that because article 13 is titled "Warranty," the limitation period in article 13 should be read as applying only to warranty claims. But the issue in Diamond B is distinguishable from the issue in the present case.

Diamond B involved a dispute over the term "provide" as used in a construction contract. 117 Wn. App. at 162. The dispute stemmed from there being two seemingly contradictory definitions of the term included in the contract. Diamond B, 177 Wn. App. at 162. But the contract also stated that some frequently used terms, such as "provide," could be "specifically limited in context." Diamond B, 177 Wn. App. at 162. Therefore, the court concluded, the section header provided additional context as to the meaning of the term. Diamond B, 177 Wn. App. at 163. But the section header was just one of six factors the court considered in interpreting the term. Diamond B, 177 Wn. App. at 163. The court did not state it was *the* dispositive factor or that it weighed heavier in the court's analysis. Diamond B, 177 Wn. App. at 163. And Hindman's reading of article 13 would require us to ignore the plain language of the contract.

Hindman also maintains that even if the limitations period applies to its breach of contract claim, it filed a claim within the limitations period when it recorded its lien with the Whatcom County auditor's office in December 2019.

10

Again, the plain language of the contract contradicts Hindman's position. The clause governing claims states that "[a]ny claim or cause of action arising out of terms of the contract . . . must be filed in a court of competent jurisdiction. . . . Any cause of action . . . which is not so filed, is waived." Moreover, recording a lien is fundamentally different than filing a claim. A lien is an encumbrance on property to secure payment of a debt and is a condition precedent to filing a lien claim. S.D. Deacon Corp. of Wash. v. Gaston Bros. Excavating, Inc., 150 Wn. App. 87, 89, 206 P.3d 689 (2009); RCW 60.04.141. By contrast, a lien claim is a legal action to enforce a validly recorded lien. RCW 60.04.171. Merely recording a lien does not ensure a claimant's right to recover; they must initiate a legal action within eight months or their right to recover on the recorded lien expires. RCW 60.04.141; Geo Exch. Sys., LLC v. Cam, 115 Wn. App. 625, 629-30, 65 P.3d 11 (2003). Article 13's limitations clause governs Hindman's breach of contract claim.

### b. Equitable Tolling of One-Year Claim Period

Even if the one-year limitation period applies, Hindman contends that the period should be equitably tolled because of the COVID-19 pandemic and because "Boos strung Hindman along with months of fruitless negotiations." We disagree that tolling would be appropriate here.

"Equitable tolling is a legal doctrine that allows a claim to proceed when justice requires it, even though it would normally be barred by a statute of limitations." Trotzer v. Vig, 149 Wn. App. 594, 606 n. 9, 203 P.3d 1056 (2009). The doctrine of equitable tolling is a narrow doctrine to be used sparingly; it is not

11

applicable more generally to "garden variety" claims of neglect.  In re Pers.

Restraint of Haghighi, 178 Wn.2d 435, 447-48, 309 P.3d 459 (2013).  Our

Supreme Court recently articulated the test for equitable tolling as follows:

> A plaintiff seeking equitable tolling of the statute of limitations in a
> civil suit must demonstrate that such extraordinary relief is
> warranted because (1) the plaintiff has exercised diligence, (2) the
> defendant's bad faith, false assurances, or deception interfered with
> the plaintiff's timely filing, (3) tolling is consistent with (a) the
> purpose of the underlying statute and (b) the purpose of the statute
> of limitations, and (4) justice requires tolling the statute of
> limitations.

Fowler v. Guerin, 200 Wn.2d 110, 125, 515 P.3d 502 (2022).  The trial court

determines the facts alleged to support the application of equitable tolling, but

whether or not the doctrine applies is a question of law that we review de novo.

Trotzer, 149 Wn. App. at 607.

The elements of equitable tolling are not met here.  As the nonmoving

party at summary judgment, Hindman must meet its burden of production to

create an issue of fact to avoid summary judgment.  Rice v. Offshore Sys., Inc.,

167 Wn. App. 77, 89, 272 P.3d 865 (2012).  Hindman has not set forth facts

sufficient to create an issue of fact supporting equitable tolling.

First, Hindman fails to establish that it exercised diligence.  Though

Hindman contends the pandemic interrupted its attention to this matter and its

negotiations with Boos, it does not set forth specific facts to show how it was

prevented from filing its action on time.  That Hindman needed to implement

COVID-19 protocols does not necessitate tolling—the courts were still operative

and Hindman was not without remedies.  See Fourth Admin. Ord. 20-2-0001-37,

12

In re Resp. to Pub. Health Risk Due to COVID-19 Pub. Health Emergency (Whatcom County Super. Ct., Wash. May 1, 2020) (implementing virtual hearing technology), https://www.whatcomcounty.us/DocumentCenter/View/47153/ Fourth-Admin-Order [https://perma.cc/D8Y6-2LLZ].

Second, Hindman does not offer any evidence of bad faith, false assurances, or deception by Boos.  That settlement discussions between the parties were not successful is not evidence of bad faith or deception.  Hindman's claim that Boos "strung" it along is unsubstantiated.  Moreover, Hindman offers no support for its assertion that it is entitled to a reasonable inference from the facts that bad faith occurred.

The third factor, whether tolling is consistent with the purpose of the underlying statute and the purpose of the statute of limitations, is not addressed by Hindman.

Lastly, Hindman does not set forth facts as to why justice requires equitable tolling in this case.  The federal cases Hindman relies on in support of tolling are unpersuasive.  Zuniga v. Bean involved a habeas corpus action under 28 U.S.C. § 2254.  No. 2:20-cv-00619-GMN-BNW, 2021 WL 1565783 (D. Nev. Apr. 21, 2021) (court order).  There, the court found equitable tolling appropriate for several reasons: the pandemic had prevented petitioner from video conferencing or meeting with counsel to determine which claims to bring or whether a neuropsychological evaluation was necessary; counsel's investigator had been unable to interview people in-person on potentially sensitive issues; counsel was not able to obtain juvenile court records; and at the time of the

13

court's April 2021 ruling, the last at-length telephone conversation between petitioner and counsel had been in October 2020. Zuniga, 2021 WL 1565783 at *1. Hindman proffers no facts comparable to those in Zuniga.[6] The other federal case, 1600 Walnut Corporation v. Cole Haan Company, addressed whether COVID-19 is an event covered by a force majeure clause, something neither party argues here. 530 F.Supp.3d 555, 558-59 (E.D. Pa. 2021). Indeed, the contract here does not even contain a force majeure clause.

Fundamentally, Hindman fails to connect the dots between the pandemic and its inability to timely sue Boos. As Hindman points out, "[r]esidential construction businesses like Hindman were shuttered for weeks until Governor Inslee issued a plan for resuming construction activity." According to Hindman, it spent this time "scrambl[ing] to implement COVID procedures, protect [its] employees, and deal[ing] with the financial difficulty of a large customer refusing

---

[6] And although Washington courts have addressed equitable tolling in the context of the pandemic, we note that Hindman relies on cases from other jurisdictions (Zuniga being from Nevada and 1600 Walnut from Pennsylvania). Washington courts, both federal and state, have declined to permit equitable tolling because of the pandemic. See, e.g., United States v. Rivera, No. 2:19-cr-87-RMP-1, 2022 WL 1434650 at *2-4 (E.D. Wash. 2022) (equitable tolling not available in light of pandemic where defendant failed to show they diligently pursued claim); Smith v. United States, No. C21-5747-BHS-SKV, 2021 WL 5910486 at *3 (W.D. Wash. 2021) (equitable tolling not appropriate where pandemic caused delays and logistical complications); In re Estate of Boswell, No. 81774-4-I, slip op. at 8 (Wash. Ct. App. Oct. 18, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/817744.pdf (concluding party did not set forth specific facts permitting equitable tolling of 90-day service period in light of pandemic); Smith v. Champness, No. 83158-5-I, slip op. at 10 (Wash. Ct. App. Oct. 31, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/831585.pdf (equitable tolling not applicable where pandemic created uncertainty). GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

to pay his bill." But though Hindman claims equitably tolling the limitations period "is consistent with the interests of justice," it does not offer specific facts, other than needing to implement protocols, to support this contention. Moreover, it is unclear why enforcing its contractual rights against Boos was not an option during this time. Equitable tolling is not appropriate in the present case.

### c. Unconscionability of One-Year Claim Period

Before oral argument, but after the parties submitted briefing, our Supreme Court issued an opinion holding that a one-year limitation period in a construction contract may be substantively unconscionable. Tadych, slip op. at 11. The parties were asked to address the Tadych opinion at oral argument. Hindman argued that the limitation period was substantively unconscionable and unenforceable. Boos asserted that RAP 2.5 barred Hindman from raising an unconscionability argument for the first time on appeal and that an unconscionability argument was not available to Hindman as the contract drafter. We conclude that the one-year limitation period is not unconscionable in this circumstance.

Washington courts will not enforce unconscionable contract terms. Gandee v. LDL Freedom Enters., Inc., 176 Wn.2d 598, 603, 293 P.3d 1197 (2013). Substantive unconscionability exists when a contractual provision is one-sided. Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 57, 470 P.3d 486 (2020). To determine if the provision is one-sided or overly harsh, courts consider whether the provision is shocking to the conscience, monstrously harsh, or

15

exceedingly calloused.  Adler v. Fred Lind Manor, 153 Wn.2d 331, 344-45, 103 P.3d 773 (2004).

In Tadych, our Supreme Court held that a construction contract's one-year limitation period was substantively unconscionable.  Tadych, slip op. at 10-11.  Similar to the present case, which involves a renovation, the Tadychs entered into a contract with Noble Ridge Construction to build a custom home.  Tadych, slip op. at 2.  The contract included the following warranty provision:

> Any claim or cause of action arising under this Agreement, including under this warranty, must be filed in a court of competent jurisdiction within one year (or any longer period stated in any written warranty provided by the Contractor) from the date of Owner's first occupancy of the Project or the date of completion as defined above, whichever comes first.

Tadych, slip op. at 2.

The Tadychs occupied their new home in April 2014, leaving them until April 2015 to file any project-related claim.  Id., slip op. at 3.  Before the claim period ran, the Tadychs discovered construction defects and hired a construction expert to review photos and architectural plans of the house.  Id., slip op. at 3.  The construction expert expressed concerns that the ventilation system might not conform to code.  Id., slip op. at 3.  The Tadychs then met with and discussed these concerns with Noble Ridge.  Id., slip op. at 3.  The discussions were ultimately unsuccessful; no repairs were performed and additional issues arose with the house.  Id., slip op. at 3-4.  Still, the Tadychs did not initiate a lawsuit until late 2017.  Id., slip op. at 4.  The Court concluded that

> [a] contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefitting the contract drafter, is also not prominently set out in the

> contract, is not negotiated or bargained for, and provides no benefit to the affected party. Based on this, we hold *here* that *this* limitation provision is void and unenforceable."

Id., slip op. at 11 (emphases added).

These factors weighed in favor of finding the provision unconscionable. Id., slip op. at 11. The Tadychs were laypersons and Noble Ridge drafted the contract, including the one-year limitation provision. Id., slip op. at 11. The one-year limitation "unduly benefit[ed] the contractor at the expense of the homeowner's right to bring a legitimate claim." Id., slip op. at 10. Nothing in the record indicated that the parties negotiated the provision. Id., slip op. at 11. And the limitation provision was not prominently set out; it was located ten pages into a 14-page contract and had little to do with a warranty, despite being in the warranty section. Id., slip op. at 11. The Court did not, however, hold that every one-year limitation period is per se substantively unconscionable. Id., slip op. at 11 ("[W]e hold *here* that *this* limitation provision is void and unenforceable") (emphases added). Rather, it applied a general unconscionability analysis to the specific facts at hand.

The present case is distinguishable from Tadych. Here, though the language of the limitation provision is substantially the same,[7] the *contractor*, the

---

[7] Compare Tadych, slip op. at 5 ("Any claim or cause of action arising under this Agreement, including under this warranty, must be filed in a court of competent jurisdiction within one year (or any longer period stated in any written warranty provided by the Contractor) from the date of Owner's first occupancy of the Project or the date of completion as defined above, whichever comes first.") with article 13 of the Boos construction agreement ("Any claim or cause of action arising out of the terms of the contract, including this warranty, must be filed in a court of competent jurisdiction within 14 days following expiration of the warranty period [one year].").

17

drafter and a sophisticated party who regularly deals with similar contracts, is challenging the limitation provision—not the "layperson." The challenged provision is one-sided, but was intended to benefit Hindman, not Boos. Rather than defaulting to the statutory claim period—meant to benefit contractors by "establishing time certainty by ending potential liability after six years regardless of when discovery or any defect occurs"—Hindman shortened the limitation period to one year, "unduly benefit[ing]" Hindman by substantially shortening the time in which Hindman could be held liable for defects. Tadych, slip op. at 9-10. Contrary to Hindman's assertions at oral argument, its statutory rights were not "gutted." Instead, the provision provided Hindman even greater protections at Boos's expense.

Moreover, Hindman admits that "each party had the opportunity to negotiate the [contract] and make changes to material terms."[8] And the challenged provision was contained in a separate paragraph, "prominently set out in the contract," and certainly known to Hindman, its drafter. Tadych, slip op. at 11. Unlike in Tadych, where the one-year limitation period "provide[d] no benefit to the affected party," at the time of drafting, Hindman was the primary party who stood to benefit from this provision; it substantially limits the time in which Hindman can be held liable. Slip op. at 11. As the drafter in this case, Hindman controlled the terms of the contract and should not be able to argue its own writing is unconscionable. Each of the factors assessed in Tadych weigh

---

[8] And logically, as the drafter, Hindman controlled the initial terms contained within the draft.

18

against a finding of unconscionability here. We hold so even though, as Hindman points out, Boos is an attorney and, thus, arguably not a layperson in the same way in which the word is used in Tadych.

### d. Factual Issues

Hindman asserts that the trial court erred in granting summary judgment because multiple issues of material fact remained. Boos contends that Hindman fails to assign error to this issue and the trial court's factual findings should be considered verities on appeal. We first conclude that Hindman did make an assignment of error regarding the trial court's improper fact finding. We also conclude that the trial court erred by deciding issues of material fact on summary judgment.

As an initial matter, Boos's contention that Hindman failed to properly assign error to a finding of fact is unsupported by the briefing. Hindman's second assignment of error in its opening brief states: "The Trial Court erred in granting Boos's summary judgment motion dismissing Hindman Construction's contract claims by failing to acknowledge multiple factual disputes surrounding operative terms such as 'claim,' 'substantial completion' and 'date of occupancy.' " Moreover, a trial court does not enter findings of fact on summary judgment. Hemenway v. Miller, 116 Wn.2d 725, 731, 807 P.2d 863 (1991) ("[F]indings of fact on summary judgment are not proper, are superfluous, and are not considered by the appellate court."). Hindman's assignment of error was not deficient.

Hindman next asserts that the trial court improperly determined the date of occupancy even though the parties set forth disputed facts. The contract states that the claim limitation period starts after "the date of substantial completion or date of occupancy, whichever occurs first." Regarding occupancy, the contract provides that

> [o]wners shall not occupy nor be placed in possession nor will the Contractor deliver full or partial possession to the Owners until the building department authority has approved the construction and issued an occupancy permit, and the Contractor has been paid in full, including all changes or additions ordered.

The contract also states that

> [t]he Owners shall not . . . occupy or use the Contractor's work until and unless the contractor shall have been first provided the signed and written punch list, if any, and opportunity to the Contractor as stated above [to access site and perform all corrective work identified on punch list].

At summary judgment, Boos argued that they occupied the house on or before July 22, 2019.[9] In support of this contention, Boos offered the following factual assertions: (1) throughout May and June, Boos moved furniture back into the house; (2) on June 29, 2019, Boos began sleeping in the house; and (3) on July 10, 2019, Hindman sent an e-mail to the architect stating that Boos and his wife had "moved in." In response, Hindman claimed that Boos had not satisfied all the contractual conditions of occupancy by July 22, 2019. Hindman asserted that (1) Boos had not signed off on the final punch list; (2) Boos had not

---

[9] July 22, 2019 is a significant date because it is exactly one year and fourteen days (the length of the claim limitation period) prior to August 5, 2020, the date Hindman filed its lawsuit.

submitted to final inspection; and (3) Boos had not received approval to occupy the premises from Hindman.

Despite the parties' disagreement as to occupancy date, the trial court concluded that the date of occupancy was June 30, 2019. In doing so, the trial court made an impermissible finding of fact. Though questions of fact may be determined as a matter of law " 'when reasonable minds could reach but one conclusion,' " if reasonable minds can differ, the question of fact is one for the trier of fact and summary judgment is not appropriate. Owen v. Burlington N. and Santa Fe R.R. Co., 153 Wn.2d 780, 788, 108 P.3d 1220 (2005) (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

Here, the parties set forth conflicting facts from which reasonable minds could reach different conclusions concerning occupancy. Whether moving furniture into the house or an e-mail from the contractor acknowledging Boos had starting living in the house qualifies as "occupancy" under the contract is a question for a finder of fact. And occupancy is a material fact because it is critical to the outcome of the case; it determines whether Hindman's claim is time barred. Such factual determination must be decided by an appropriate fact finder after a trial. Because an issue of material fact exists as to occupancy, we do not address whether the same is true for substantial completion.

2. Dismissal of Hindman's Equitable Claims

Hindman contends that the trial court erred in granting summary judgment dismissing its claims of quantum meruit and unjust enrichment because it performed work outside the scope of the contract and deserves to be

21

recompensed. Boos counters that Hindman did not perform work outside the contract and that work performed pursuant to a change order is within the scope of the contract. We conclude the trial court properly granted summary judgment to dismiss Hindman's equitable claims.

" 'A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.' " Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 149, 389 P.3d 626 (2016) (quoting Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604, 137 P.2d 97 (1943)). Unjust enrichment and quantum meruit are equitable remedies available in the absence of a contractual relationship. Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) ("Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it. . . . 'Quantum meruit,' on the other hand, is the method of recovering the reasonable value of services provided under a contract implied in fact."). These equitable remedies are not available, however, if the claim raised is covered by the terms of the contract. Boyd, 197 Wn. App. at 149.

Hindman asserts that the change orders requested by Boos were outside the scope of the contract because they increased the overall cost of the project, which is now in dispute, and because the change orders were not foreseeable to a reasonable contractor at the time of signing. The plain language of the contract contradicts this argument. The contract provides, in pertinent part, that

22

[w]ork that is not required by the Plans will be considered a Change Order. . . .

All change orders shall be incorporated in, and become a part of the contract. The cost of a change order will be calculated based upon time and materials at cost plus 16%; Contractor's time will be billed at $55.00 per hour; total is subject to Washington State Sales Tax.

Change Orders may affect the completion date of the project.

The contract expressly provides that additional work requested by a change order will become part of the contract. And here, both parties operated under that assumption.[10] Hindman's reliance on Bignold v. King County, 65 Wn.2d 817, 399 P.2d 611 (1965), is misplaced. In Bignold, the contractor was able to recover for additional excavation work through quantum meruit because that work was unforeseen at the time of contracting. 65 Wn.2d at 822. That is not the case here. Here, the parties set out with the understanding that change orders would occur. While the specific changes might not have been ascertainable at the outset of the project, the parties envisioned that change orders would become part of the contract. Hindman's equitable claims were properly dismissed on summary judgment.

3. Dismissal of Hindman's Lien Claim

Hindman claims that the trial court erred in finding that its lien claim did not survive dismissal of its contract claim. Boos asserts that without a valid contract claim, Hindman's lien claim cannot stand on its own. Because we conclude that

---

[10] For example, when asked in discovery to produce all change orders and identify all additional work performed outside the scope of the contract, Hindman answered: "Defendants [sic] did not do any work 'beyond the scope of the contract.' The parties' contract specifically envisions change orders under article 11, and defines such orders as falling 'under this contract.' "

the lien claim cannot stand alone without the contract claim, dismissal of the lien claim is premature.

A lien is an encumbrance on property to secure payment of a debt. S.D. Deacon Corp., 150 Wn. App. at 89. Washington's construction lien statute sets out four elements for a valid lien claim: (1) furnishing services or equipment; (2) for improvement of real property; (3) at contract prices; (4) at the behest of the owner or owner's agent. RCW 60.04.021; Colorado Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 662, 246 P.3d 835 (2011). Washington courts have determined that a lien filing depends on the existence of an enforceable debt, contractual or otherwise. Inland Empire Dry Wall Supply Co. v. W. Sur. Co. (Bond No. 58717131), 189 Wn.2d 840, 847, 408 P.3d 691 (2018). A lien is an accessory to the debt it secures and does not have any independent value once the underlying debt no longer exists. Pratt v. Pratt, 121 Wash. 298, 300, 209 P. 535 (1922).

Contrary to Hindman's assertions, a valid lien claim requires an underlying claim for money owed, such as a breach of contract claim.[11] Pratt is instructive here. Though Pratt concerned a mortgage, RCW 60.04.171 directs that liens are to be foreclosed in the same manner prescribed for foreclosure of mortgages, and Pratt is therefore analogous. In Pratt, our Supreme Court held that a mortgage foreclosure action was time barred because the statute of limitations

---

[11] Hindman acknowledges this, too, in its opening brief by stating that its "lien claim will be reanimated if this Court reverses either the Trial Court's contractual or equitable rulings".

had run on the underlying debt. 121 Wn. at 302. The Court explained that "the mortgage itself was not a written obligation independent of the debt for which it was given as security. . . . [A] mortgage creates nothing more than a lien in support of the debt which it is given to secure." Pratt, 121 Wash. at 300. So, the Court concluded, " 'the debt is the principal thing . . . [t]he security is a mere incident.' " Pratt, 121 Wash. at 302 (quoting McGovney v. Gwillim, 16 Colo. App. 284, 65 Pac. 346).

Because we reverse dismissal of the contract claim, it is premature to determine whether a lien claim is appropriate and therefore it was error to dismiss it.

Attorney Fees

Though Hindman assigns error to the trial court awarding attorney fees to Boos, it does not brief the issue fully. Rather, it is given passing treatment in Hindman's conclusion. But "[p]assing treatment of an issue or lack of a reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996). We do not consider Hindman's argument.

Boos seeks attorney fees and costs if they prevail. In support of this contention, Boos cites the parties' contract and the lien foreclosure statute, both of which provide for attorney fees for the prevailing party. Because we reverse in part, an award of attorney fees is premature at this juncture.

We reverse in part and affirm in part and remand for proceedings consistent with this opinion.

_Smith, a.c.j._

WE CONCUR:

_Chung, J._