[No. 39070-1-II. Division Two. September 14, 2010.]

WESTAR FUNDING, INC., ET AL., *Respondents*, v. RICHARD E. SORRELS ET AL., *Appellants*.

*Frederick L. Hetter III*, for appellants.

*Robert J. Henry* (of *Lasher Holzapfel Sperry & Ebberson PLLC*), for respondents.

[As amended by order of the Court of Appeals November 9, 2010.]

¶1 QUINN-BRINTNALL, J. — Richard E. Sorrels appeals from a summary judgment quieting title to a piece of Gig Harbor property in Xianju Xui. Sorrels contends that the trial court erred when it found that he had no right to foreclose on a 1992 promissory note secured by a 1992 deed against the property. We hold that the statute of limitations and the statute of frauds prohibit Sorrels from foreclosing on the 1992 note. Because there are no disputed issues of material

fact, we affirm the Pierce County Superior Court's judgment quieting title to the property in Xui. In addition, because Sorrels's appeal is frivolous, we award Xui appellate attorney fees.

## FACTS

¶2 This appeal arises from the sale of real property located in Gig Harbor, Washington.[1] Sorrels sold the property to David Brown in 1992. In conjunction with the sale, Sorrels had Brown execute a promissory note. The note was a two-year note that contemplated a single repayment of all principal and interest in the amount of $33,167 upon maturity on August 3, 1994. As security for the note, Brown executed a deed of trust (1992 deed) against the Gig Harbor property. He recorded it in Pierce County on August 4, 1992.[2]

¶3 According to Sorrels, Brown did not pay the 1992 note when it matured on August 3, 1994. Nevertheless, Sorrels took no action to collect the note or to foreclose on the 1992 deed at that time.

¶4 In 1995, Brown executed a statutory warranty deed (1995 deed) conveying the Gig Harbor property to The R.E.S. Trust.[3] Brown specifically conveyed the Gig Harbor property to Sorrels as trustee for The R.E.S. Trust. On behalf of The R.E.S. Trust, Sorrels recorded the deed on

---

[1] The legal description of the property at issue is

[b]eginning 760 feet South and 482 feet East of the Northwest corner of Lot 4, Section 6, Township 21 North, Range 1 East of the W.M., in Pierce County, Washington, thence North 47 feet; thence East 280 feet, more or less, to meander line of Glencove; thence South 44°15' East 65.61 feet along meander line; thence West 325.78 feet to the point of beginning.

Clerk's Papers at 4.

[2] The 1992 deed was recorded under Pierce County Auditor number 9208040744.

[3] According to Sorrels, he formed The R.E.S. Trust as a revocable living trust in 1993 but by 1994, he had converted it to an irrevocable trust. R.E.S. stands for Richard E. Sorrels.

November 13, 1995.[4] As a part of the transaction, Sorrels and Brown signed an excise tax affidavit noting that Brown executed the 1995 deed conveying the Gig Harbor property to The R.E.S. Trust, and expressly to Sorrels as trustee, in lieu of foreclosure.

¶5 In 2002, acting in his capacity as The R.E.S. Trust trustee, Sorrels borrowed $61,500 from Westar Financial, Inc. To secure the loan, The R.E.S. Trust executed a promissory note (Westar note) and a deed of trust in the Gig Harbor property (2002 deed) in favor of Westar. Westar recorded the deed on June 19, 2002.[5] In his copy of the loan application, Sorrels represented that the Gig Harbor property was free and clear of encumbrances. He further verified that the loan would be secured by "a first mortgage or deed of trust on the property." Clerk's Papers (CP) at 133.

¶6 Soon after acquiring the loan, The R.E.S. Trust defaulted on the Westar note.[6] Westar first instigated nonjudicial foreclosure proceedings in March 2003. In total, Westar commenced four separate nonjudicial foreclosures on the Gig Harbor property. In the first three nonjudicial foreclosures, The R.E.S. Trust cured the defaults and/or reached an agreement with Westar at the last minute.

¶7 During pendency of the third foreclosure, Sorrels filed a petition for chapter 13 bankruptcy on behalf of The R.E.S. Trust. Along with the petition, Sorrels filed a schedule of assets and liabilities. He listed Westar as a secured creditor holding a secured claim against The R.E.S. Trust, but he did not list himself as a secured creditor. The chapter 13 trustee eventually moved to dismiss the petition. Sorrels responded by moving to convert the action to a chapter 11 bankruptcy. He later voluntarily dismissed The R.E.S. Trust's bankruptcy petition.

---

[4] The 1995 deed was recorded under Pierce County Auditor number 9511130390.

[5] The 2002 deed was recorded under Pierce County Auditor number 200206210932.

[6] Sorrels admits that The R.E.S. Trust defaulted on the Westar note.

¶8 Westar commenced the fourth nonjudicial foreclosure on January 31, 2006, after the The R.E.S. Trust did not make a promised balloon payment. During the fourth foreclosure, Sorrels filed two motions in Pierce County Superior Court to restrain the trustee sale; both were denied. Westar and The R.E.S. Trust then entered a foreclosure extension agreement. By the terms of the agreement, Sorrels acknowledged the default under the Westar note and acknowledged the amount The R.E.S. Trust owed Westar. In addition, on behalf of The R.E.S. Trust, Sorrels released any and all other claims against Westar, including "all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future." CP at 137. In exchange for Westar's postponement of the foreclosure sale, The R.E.S. Trust agreed to pay off the debt in full on or before February 2, 2007. At that time, The R.E.S. Trust owed Westar $69,999.21. The parties signed the agreement on October 5, 2006.

¶9 Less than three weeks after signing the foreclosure extension agreement, John Mills, an attorney representing The R.E.S. Trust and Sorrels, sent a letter to Westar's trustee who had commenced the fourth nonjudicial foreclosure sale of the Gig Harbor property. In the letter, Mills alleged that Sorrels individually held the 1992 note secured by a deed of trust on the Gig Harbor property. Mills further suggested that Westar would have to pay a large sum of money to Sorrels personally to avoid losing its security interest:

> Anyway, it seems to me . . . that Westar is going to end up paying Rick Sorrels personally to avoid his foreclosure of the [1992] Brown Deed of Trust, and then Rick is going to turn around and loan enough money to the Trust so it can pay Westar the amount set out in the settlement agreement.

CP at 140. Stated another way, Mills suggested that Sorrels and The R.E.S. Trust could extract the money to repay the Westar loan from Westar itself.

¶10 The R.E.S. Trust did not pay its obligation to Westar by February 2, 2007, as it had promised under the foreclo-

sure extension agreement. Instead, Sorrels filed another chapter 11 bankruptcy petition on behalf of The R.E.S. Trust on February 1, 2007. The petition automatically stayed the nonjudicial foreclosure sale of the Gig Harbor property scheduled for the next day. Then, on February 20, Sorrels voluntarily dismissed The R.E.S. Trust's chapter 11 bankruptcy petition. After the automatic stay was lifted, the Westar trustee rescheduled the nonjudicial foreclosure sale of the Gig Harbor property on April 13, 2007.

¶11 In the meantime, Mills, acting as trustee for Sorrels, recorded a notice of trustee's sale, purporting to schedule a trustee's nonjudicial foreclosure sale for the 1992 deed of trust on the Gig Harbor property. He set the foreclosure sale for May 18, 2007, approximately one month after Westar's scheduled nonjudicial foreclosure sale of the same property. He sought to recover principal, interest, late charges, fees, and costs totaling $225,532.

¶12 On April 13, 2007, Westar foreclosed on its 2002 deed by a nonjudicial trustee's sale. No bidders appeared for the sale; consequently, the lender was the only bidder and the trustee issued a trustee's deed to Xui. Xui recorded the deed on April 30, 2007. The effect of the deed was to vest title in Xui and to divest The R.E.S. Trust from title to the property.

¶13 Despite the nonjudicial foreclosure on the Westar deed of trust, Sorrels attempted to go forward with his threatened nonjudicial foreclosure sale based on the 1992 deed. In an attempt to prevent that sale, Westar and Xui filed this lawsuit against Sorrels, individually, and Mills, in his capacity as a trustee, seeking to quiet title in favor of Xui and moving for a preliminary injunction to restrain Sorrels from conducting a nonjudicial foreclosure sale on the Gig Harbor property.

¶14 Sorrels opposed Westar and Xui's motion for preliminary injunction. In a declaration supporting his opposition, he stated,

First of all, as described on the face of the note, it matured August 23, 1994. However, the court can see that the principal

effect of the passing of maturity was to increase the interest payable from 8 1/2 % to 12 %. Thus, after August 23, 1994, [Sorrels] held a note paying 12% fully secured by waterfront property in Washington.

. . . .

[I]n 1995, Mr. Brown transferred his title to the property to R.E.S. Trust because he was unable to pay a Note held by the R.E.S. Trust. At that time, *although nothing was reduced to writing, quite obviously R.E.S. Trust assumed the obligation to pay [Sorrels]*. Mr. Brown left town, and had turned over his property to the Trust, so he obviously wasn't going to pay [Sorrels] back. The trust acquired title to the property, but again obviously it would have to pay on the note eventually, or [Sorrels would] foreclose [his] Deed of Trust and take the property away.

Still, [Sorrels] did not ever need the cash, so on an ongoing basis, the due date was extended by agreement. Certainly, [Sorrels] never called the note in default. And, that was a mutually beneficial arrangement. The Trust held title to the property and benefited by the amount waterfront property in Washington appreciated in excess of the interest accruing on the note to [Sorrels]. [Sorrels] earned 12% on [his] money, which [he] could not possibly have received from a bank, and it was tax deferred since [he] wasn't actually getting paid annually. So, it was a win-win deal.

Throughout all this time, the R.E.S. Trust was waiving any statute of limitations on the note. . . .

. . . .

[I]t should be pretty obvious that [Sorrels] never intended to just waive [his] right to repayment of the note. So, for years and years, what happened is that, by mutual agreement [between Sorrels and his R.E.S. Trust], the note's due date was extended, the Trust got property appreciation and [Sorrels] got 12% interest which was tax deferred because it simply accrued as a debt secured by the Deed of Trust.

CP at 33 (emphasis added).

¶15 Sorrels made no attempt to explain why he had previously represented to Westar that the Gig Harbor property was free of liens and encumbrances. The trial court granted Westar's motion for a preliminary injunction.

¶16 On January 20, 2009, Westar and Xui filed a motion for summary judgment seeking to quiet title of the Gig Harbor property. In addition, they sought attorney fees and costs. Following briefing and argument, the trial court granted Westar and Xui's motion and awarded them reasonable attorney fees and costs. Sorrels appeals. Westar and Xui respond jointly.

## ANALYSIS

STANDARD OF REVIEW

■ ¶17 Where, as here, there are no disputed facts, the issue of summary judgment is a question of law we review de novo. *Walcker v. Benson & McLaughlin, PS*, 79 Wn. App. 739, 741, 904 P.2d 1176 (1995) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)), *review denied*, 129 Wn.2d 1008 (1996). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).

¶18 Here, the trial court granted Westar and Xui's motion for summary judgment as a matter of law. In doing so, it ordered that title to the property at issue is quieted in Xui under the deed he recorded on April 30, 2007. Because the statute of limitations and statute of frauds bar Sorrels's foreclosure on the 1992 deed as a matter of law, we affirm the trial court's summary judgment quieting title to the property in Xui.

STATUTE OF LIMITATIONS

■ ¶19 Sorrels contends that the statute of limitations does not bar him from collecting on the 1992 deed. The 1992 deed came due in 1994 and the six-year statute of limitations on collection of the note expired in 2000. The statute of limitations bars Sorrels's collection action and the trial court did not err in granting Xui quiet title to the property.

¶20 Former RCW 4.16.040 (1989) governs the statute of limitations on promissory notes and deeds of trust. That

statute imposes a six-year limitation for "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement." Former RCW 4.16.040(1). When an action for foreclosure on a deed of trust is barred by the statute of limitations, RCW 7.28.300 authorizes an action to quiet title. *See Walcker,* 79 Wn. App. at 742-46; *Jordan v. Bergsma,* 63 Wn. App. 825, 828-31, 822 P.2d 319 (1992).

¶21 In 1992, Brown executed a $33,167 promissory note in favor of Sorrels. That same year, he recorded the deed of trust against the property to secure the note. Brown was to repay the note on August 3, 1994, but he failed to do so. Sorrels did not file an action to collect on the 1992 note until February 16, 2007, over 12 years after it came due. Because he did not initiate his foreclosure within the six-year limitation period, Sorrels is time barred from foreclosing on the 1992 promissory note. RCW 4.16.005; RCW 7.28.300; *Walcker,* 79 Wn. App. at 742-46.

¶22 Sorrels maintains that only defendants may plead RCW 7.28.300 as a bar to foreclosure. He contends that, as plaintiffs, Westar and Xui may not plead the statute of limitations because they initiated the quiet title action. We disagree. Sorrels's argument conflicts with RCW 7.28.300's plain language. RCW 7.28.300 states,

> *The record owner of real estate* may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

(Emphasis added.)

¶23 Xui is a record owner of the Gig Harbor property. As such, RCW 7.28.300 authorizes him to maintain an action to quiet title of that property.

¶24 The facts here are undisputed and simple. Sorrels failed to foreclose on the 1992 deed within the six-year statute of limitations; accordingly, he lost the right to do so.

RCW 7.28.300. Xui legally acquired the Gig Harbor property through Westar's nonjudicial foreclosure sale and, under RCW 7.28.300, he was a record owner of the property and had a right to maintain an action to quiet title to the property. The trial court properly granted summary judgment and quieted title in Xui's favor. *See* CR 56(c).

STATUTE OF FRAUDS

¶25 Sorrels also contends that he and The R.E.S. Trust tolled the statute of limitations through a series of ratified agreements. He argues that Brown transferred title to the property to The R.E.S. Trust and The R.E.S. Trust then assumed the obligation to pay the note. According to Sorrels, The R.E.S. Trust tolled the debt through partial payments and use of the property that Sorrels authorized.

■ ¶26 Under the statute of frauds, an oral contract assuming and agreeing to pay the debt of another is unenforceable. RCW 19.36.010(2), the statute of frauds, requires a writing, signed by the party to be charged, for "every special promise to answer for the debt, default, or misdoings of another person." Sorrels provided no documentary evidence that The R.E.S. Trust assumed an obligation to pay Brown's debt to Sorrels.[7] Moreover, Sorrels stated in his declaration that "nothing was reduced to writing." CP at 33. Accordingly, there is insufficient evidence supporting his contention that, through a series of agreements, he and The R.E.S. Trust properly tolled the six-year statute of limitations. Therefore, the statute ran and bars Sorrels's attempt to foreclose. Because there are no genuine issues of material fact, the trial court did not err when it granted

---

[7] The document relied by on Sorrels, "Addendum to Promisory [sic] Note" (CP at 187), does not support his claim that The R.E.S. Trust assumed any obligation to pay Brown's debt to Sorrels. Contrary to Sorrels's contention, the fact that The R.E.S. Trust received legal ownership of the property at issue does not, by itself, obviate Brown's original obligation to pay Sorrels. The addendum, signed twice by Sorrels as both "Beneficiary" and "Trustee for R.E.S. Trust" but not by Brown, shows only that the deed of ownership had passed from Brown to The R.E.S. Trust and that Sorrels and The R.E.S. Trust agreed Sorrels would have "unrestricted use of the entire garage portion of the subject property without cost until such time that the Promissory Note is paid in full." CP at 187. Neither does the fact that the addendum purports to extend "the due date of the final payment" to December 2013 affect our analysis. CP at 187. On its face, the addendum appears to extend *Brown's* due date to pay Sorrels to December 2013, but the debt at issue here is The R.E.S. Trust's debt owed to Westar.

summary judgment and quieted title in Xui's favor. *See* CR 56(c).[8]

ATTORNEY FEES

A. ATTORNEY FEES ON SUMMARY JUDGMENT

¶27 The trial court awarded Westar and Xui reasonable attorney fees and costs based on the 1992 promissory note's attorney fees provision. Sorrels did not raise a timely challenge to the trial court's attorney fee award in his opening brief. Instead, without citing any authority, Sorrels asserts that the trial court's attorney fee award was improper for the first time in his reply brief. An issue raised and argued for the first time in a reply brief is too late to warrant consideration. *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). Moreover, we do not consider arguments that are not developed in the briefs and for which a party has not cited authority. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). The trial court's attorney fee award stands.

B. ATTORNEY FEES ON APPEAL

¶28 Both parties request attorney fees on appeal under RAP 18.1. Sorrels's appeal presents no debatable issues or legitimate arguments for an extension of the law and is frivolous. Accordingly, under RAP 18.9(a), we award Westar and Xui reasonable appellate attorney fees and costs on compliance with RAP 18.1.

BRIDGEWATER and ARMSTRONG, JJ., concur.

After modification, further reconsideration denied November 9, 2010.

---

[8] Because we affirm the trial court's grant of summary judgment and order quieting title to the property, we do not address Westar's remaining issues.