## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareourt.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 20, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 20, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| GARY L. MERRITT and JEANETTE A. MERRITT, <br><br> Petitioners, <br><br> v. <br><br> USAA FEDERAL SAVINGS BANK, <br><br> Respondent. | NO. 100728-1 <br><br> EN BANC <br><br> Filed: <u>July 20, 2023</u> |

GORDON McCLOUD, J.— The issue in this case is whether a bankruptcy discharge triggers the statute of limitations to enforce a deed of trust. We affirm the Court of Appeals and the trial court and hold that bankruptcy discharge does not trigger the statute of limitations to enforce a deed of trust.

FACTS AND PROCEDURAL HISTORY

I.   The Merritts open five home equity lines of credit with USAA, secured by deeds of trust on four properties

The material facts in this case are undisputed. Gary and Jeanette Merritt own four residential properties in Marysville, Washington. The properties are each encumbered by a first mortgage. Between 2005 and 2007, the Merritts opened five home equity lines of credit (HELOCs) with a total loan amount of $366,500. To do

No. 100728-1

so, the Merritts executed five promissory notes (notes or HELOC agreements) in favor of USAA Federal Savings Bank. The Merritts secured these loans by executing deeds of trust on the properties with USAA as the beneficiary.

The terms of each HELOC agreement are similar in relevant respects. *See, e.g.*, 1 Clerk's Papers (CP) at 37. Each agreement is an installment contract that requires the Merritts to make monthly payments on the loan. *Id.* ¶¶ 11-14. At each loan's maturity date, a final payment for the remaining outstanding balance becomes due. *Id.* ¶ 14. The earliest maturity date for any of the loans is May 19, 2025 (4 CP at 664), and the latest maturity date is May 3, 2027 (1 CP at 37).

Each HELOC agreement is secured by a deed of trust on one of the properties. 1 CP at 37, ¶ 16. The terms of each deed of trust are also similar in relevant respects. *See, e.g.*, 1 CP at 164-71. The deeds of trust specify "that all payments under the [HELOC agreement] will be paid when due and in accordance with the terms of the [HELOC agreement] and this Security Instrument." *Id.* at 165, ¶ 5. The Merritts will be in default if they "fail[] to make a payment when due." *Id.* at 167, ¶ 9. The "Remedies" section of each deed of trust gives USAA the option to accelerate the debt, foreclose on the deed of trust, and sell the real estate to pay off the loan in case of uncured default. *Id.* ¶ 10.

2

No. 100728-1

II.    The Merritts stop making monthly loan payments to USAA and receive a bankruptcy discharge

In November 2012, the Merritts filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Washington. Gary Merritt testified via written declaration that "[t]he debt to USAA was listed under Schedule D and F of the bankruptcy petition." 4 CP at 839.[1] On February 13, 2013, the federal district court granted the Merritts a bankruptcy discharge under 11 U.S.C. § 727. *Id.* The discharge order reads in its entirety: "The Debtor(s) filed a Chapter 7 case on November 13, 2012. It appearing that the Debtor is entitled to a discharge, IT IS ORDERED: The Debtor is granted a discharge under 11 U.S.C. § 727." *Id.* at 837.

The Merritts stopped making their monthly payments on the USAA loans prior to the November 2012 bankruptcy filing. 1 CP at 197. They made no further payments on these loans following the bankruptcy discharge. Pet. for Rev. at 3;

---

[1] The record contains portions of the schedules of creditors attached to the bankruptcy petition. On Schedule D, the Merritts identified USAA as a creditor holding a secured claim for $125,015.67 for a second mortgage on 7601 69th St. NE. 4 CP at 861. On Schedule F, the Merritts also identified USAA as holding "unsecured nonpriority claims" for an additional $241,954.64. *Id.* at 862. As the Court of Appeals noted, "It is unclear why the Merritts identified USAA as an unsecured creditor given that they executed deeds of trust to secure the USAA lines of credit." *Merritt v. USAA*, No. 82162-8-I, slip op. at 3 n.2 (Wash. Ct. App. Mar. 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/821628.pdf. At this point, however, the parties do not dispute that USAA had security interests in the four residential properties at issue here.

No. 100728-1

Resp't USAA's Suppl. Br. at 2. USAA never accelerated any of the loans or acted to foreclose on the properties. 1 CP at 18; Resp't USAA's Suppl. Br. at 2.

III.     The Merritts bring quiet title lawsuits seeking to remove USAA's liens on the properties

On July 8, 2020, the Merritts filed four quiet title complaints in Snohomish County Superior Court seeking to remove USAA's liens on each of the properties. Each complaint is substantively identical. Relying on *Edmundson v. Bank of America, NA*, 194 Wn. App. 920, 378 P.3d 272 (2016), the Merritts argued that the six-year statute of limitations to enforce the deeds of trust expired six years after February 12, 2013, the day before their bankruptcy discharge. 1 CP at 197. Thus, they concluded, they were entitled to quiet title under RCW 7.28.300, which provides that a property owner "may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations." *Id.* The Merritts also sought attorney fees and costs. *Id.*

In October 2020, the Merritts moved for summary judgment in each case. In November 2020, the trial court denied each of these motions.

In February 2021, USAA moved for summary judgment in each case. USAA argued that the plaintiffs were not entitled to quiet title because the statute of

4

No. 100728-1

limitations to foreclose on the deeds of trust would not begin to run until the maturity date of each loan, the earliest of which will occur in 2025.

In each case, the trial court granted USAA's summary judgment motion and entered final judgment in favor of USAA. The trial court rejected the Merritts' argument that the bankruptcy discharge triggered the statute of limitations on USAA's ability to foreclose on the deeds of trust. *See, e.g.*, 1 CP at 9. It ruled that bankruptcy "extinguishes only the personal liability of the debtors on the Promissory Note" and that USAA's "'right to foreclose on the mortgage survive[d] . . . the bankruptcy.'" *Id.* (quoting *Edmundson*, 194 Wn. App. at 925). Thus, USAA's "ability to foreclose on the mortgage in an in rem proceeding remains intact after the discharge of the Plaintiffs' personal liability in bankruptcy." *Id.* Because the HELOC agreements (notes) are installment contracts, the statute of limitations runs against each installment as it becomes due. *Id.* at 10. USAA never accelerated the maturity date, so monthly installment payments continue to come due until the maturity date, which will be 2025 at the earliest. *Id.* Therefore, "[w]hile there may be installment payments that are now barred by the six-year statute of limitations, the entire note is not yet barred by the statute of limitations." *Id.* Thus, the court ruled that the Merritts were not entitled to quiet title as to the entire debt. *Id.*

No. 100728-1

The Merritts appealed. The Court of Appeals consolidated the four appeals under one cause number. Notation Ruling, No. 82162-8-I (Wash. Ct. App. June 25, 2021). The court affirmed in an unpublished decision, relying on its recent decision in *Copper Creek (Marysville) Homeowners' Ass'n v. Kurtz*,[2] to hold that the six-year statute of limitations had not begun to run on enforcement of the deeds of trust since none of the loans had yet matured. *Merritt v. USAA*, No. 82162-8-I, slip op. at 6-7 (Wash. Ct. App. Mar. 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/821628.pdf. The court awarded attorney fees to USAA pursuant to RAP 18.1(a). *Id.* at 7.

The Merritts sought review in this court, raising the same issues they raised in the Court of Appeals. However, the Merritts now assert that the statute of limitations began to run on each deed of trust on the due date of the last monthly payment prior to the bankruptcy discharge, which was January 11, 2013. Pet. for Rev. at 17. Thus, they now conclude that the statute of limitations expired six years after that date, on January 10, 2019. *Compare id*., *with* 1 CP at 197.

We granted the Merritts' petition for review. Ord. Granting Rev., *Merritt v. USAA*, No. 100728-1 (Wash. Sept. 7, 2022). We now affirm.

---

[2] 21 Wn. App. 2d 605, 508 P.3d 179, *review granted*, 200 Wn.2d 1001 (2022).

No. 100728-1

ANALYSIS

As discussed above, the issue in this case is whether a bankruptcy discharge triggers the statute of limitations to enforce a deed of trust. We affirm the Court of Appeals and the trial court and hold that bankruptcy discharge does not trigger the statute of limitations to enforce a deed of trust.[3]

I.      Basic principles related to deeds of trust and application to these facts

"A mortgage is an interest in real property that secures a creditor's right to repayment." *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). A deed of trust is a type of mortgage involving three parties: the borrower-grantor, the creditor-beneficiary, and the trustee. *Rustad Heating & Plumbing Co. v. Waldt*, 91 Wn.2d 372, 376, 588 P.2d 1153 (1979). To create a deed of trust mortgage, the borrower-grantor executes a promissory note—a promise to repay the debt—in favor of the creditor-beneficiary. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.3, at 260 (2d ed. 2004). As security for the debt, the borrower-grantor conveys title to real property—the "deed of trust"—to a trustee, who holds

---

[3] We review summary judgment orders de novo, engaging in the same analysis as the trial court. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

No. 100728-1

it in trust for the creditor-beneficiary. The deed of trust creates a lien on the property.[4] *Id.*

If the borrower defaults on the note, the creditor has the right to enforce the deed of trust via foreclosure, which is "[a] legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Foreclosure*, BLACK'S LAW DICTIONARY 789 (11th ed. 2019).

A deed of trust "follows the note by operation of law." *Winters v. Quality Loan Serv. Corp. of Wash., Inc.*, 11 Wn. App. 2d 628, 643-44, 454 P.3d 896 (2019) (citing *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 104, 285 P.3d 34 (2012)). That means that if a promissory note is unenforceable, the deed of trust securing that note is also unenforceable. *Pratt v. Pratt*, 121 Wash. 298, 300, 209 P. 535 (1922); *George v. Butler*, 26 Wash. 456, 468, 67 P. 263 (1901).

As contracts in writing, promissory notes and deeds of trust are subject to the six-year statute of limitations stated in RCW 4.16.040(1), which provides that

---

[4] Washington is a "lien theory" state, meaning that in this state, "'[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92, 285 P.3d 34 (2012) (alteration in original) (quoting *Pratt v. Pratt*, 121 Wash. 298, 300, 209 P. 535 (1922)); *see also* 18 STOEBECK & WEAVER, *supra,* § 18.2, at 305. In other words, a mortgage or deed of trust does not convey title to the property pledged as security even if on its face the deed conveys title to the trustee. Rather, the law considers such a conveyance an equitable mortgage because the transfer of title "'is given as security for an obligation.'" *Bain*, 175 Wn.2d at 93 (quoting 18 STOEBUCK & WEAVER, *supra,* § 17.3, at 260).

No. 100728-1

an "action upon a contract in writing, or liability express or implied arising out of a written agreement" shall be commenced within six years. *U.S. Bank Nat'l Ass'n v. Ukpoma*, 8 Wn. App. 2d 254, 258, 438 P.3d 141 (2019) (citing *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 784-85, 239 P.3d 1109 (2010)). "The statute of limitation does not begin to run until a breach of the contract occurs." *Safeco Ins. Co. v. Barcom*, 112 Wn.2d 575, 583, 773 P.2d 56 (1989).

Because the enforceability of the promissory note and deed of trust are linked, the Court of Appeals has held that the six-year statute of limitations on a deed of trust "begins to run when the party is entitled to enforce the obligations of the note." *Wash. Fed., Nat'l Ass'n v. Azure Chelan LLC*, 195 Wn. App. 644, 663, 382 P.3d 20 (2016) (citing RCW 4.16.040; *Westar Funding*, 157 Wn. App. at 784).

The promissory notes executed by the Merritts are installment notes because they are payable in periodic installments with a final payment coming due on a future maturity date.[5] *Merceri v. Bank of N.Y. Mellon*, 4 Wn. App. 2d 755, 759-60, 434 P.3d 84 (2018) (quoting *Edmundson*, 194 Wn. App. at 930; *Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945)). Where a contract requires payment of

---

[5] In contrast to an installment note, a demand note is "payable immediately on the date of its execution," *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014), and thus "the statutory limitation period begins to run on a demand note when it is executed." *Merceri*, 4 Wn. App. 2d at 759-60 (citing *Walcker v. Benson & McLaughlin, PS*, 79 Wn. App. 739, 741-42, 904 P.2d 1176 (1995)).

No. 100728-1

debt by installments, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Herzog*, 23 Wn.2d at 388; *accord* 31 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 79:17, at 338 (4th ed. 2004); 25 DAVID K. DEWOLF, KELLER W. ALLEN & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 16:21, at 511 (3d ed. 2014). Thus, unless the creditor accelerates the note, the final statute of limitations for an installment note begins to run on the maturity date of the loan—the date when the final installment payment becomes due. *Merceri*, 4 Wn. App. 2d at 760; *A.A.C. Corp. v. Reed*, 73 Wn.2d 612, 615, 440 P.2d 465 (1968).[6]

Applying the principles outlined above to this case, the six-year statute of limitations on each individual missed installment payment began to run on the due

---

[6] Promissory notes, including the ones in this case, often contain clauses permitting the creditor to accelerate the note in case of a default. Acceleration causes the entire remaining balance to become due immediately, "and the statute of limitations is triggered for all installments that had not previously become due." *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 434-35, 382 P.3d 1 (2016) (citing 31 WILLISTON & LORD, *supra*, § 79:17, at 338, § 79:18, at 347-50; 12 AM. JUR. 2D, *Bills & Notes* § 581 (2009)). Acceleration occurs only by some explicit and affirmative action """"by which the holder of the note makes known to the payors that he intends to declare the whole debt due."""" *Id*. at 435 (quoting *Glassmaker v. Ricard*, 23 Wn. App. 35, 37, 593 P.2d 179 (1979) (quoting *Weinberg v. Naher*, 51 Wash. 591, 594, 99 P. 736 (1909))). "Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can be begun within six years of any particular installment default and the amount due can be the then principal amount owing." 18 STOEBUCK & WEAVER, *supra*, § 18.34, at 87 (2d ed. Supp. 2023).

10

date of each missed payment. Thus, there are some individual installment payments that may now be barred by the six-year statute of limitations. But the final statute of limitations has not yet begun to run on any of the notes or deeds of trust. That final statute of limitation will not begin to run on any note or its corresponding deed of trust until that note reaches maturity. *Wash. Fed.*, 195 Wn. App. at 663 (citing *Hopper v. Hemphill,* 19 Wn. App. 334, 335-36, 575 P.2d 746 (1978); *Westar Funding,* 157 Wn. App. at 784; 31 WILLISTON & LORD, *supra*, § 79:17, at 338, § 79:18, at 347-50).

The Merritts do not dispute that the above analysis would normally apply to determine the limitations period for enforcement of the deeds of trust. *See* Pet. for Rev. at 7. Instead, they assert that their 2013 bankruptcy discharge changes the analysis. Appellants' Suppl. Br. at 7. As explained in the next section, we disagree.

II.     Bankruptcy discharge of personal liability on an installment note does not trigger the statute of limitations to enforce the related deed of trust

Bankruptcy is intended "to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Perez v. Campbell*, 402 U.S. 637, 648, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971) (quoting *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)). But the federal bankruptcy code and long-standing precedent limit the effect of a bankruptcy discharge on a secured debt.

No. 100728-1

Prior to a bankruptcy discharge, a creditor may typically pursue both in personam and in rem remedies to recover a debt upon which a borrower has defaulted. *Johnson*, 501 U.S. at 82-83. In other words, prior to discharge, a creditor "ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally." *Id.*

A Chapter 7 bankruptcy discharge, however, eliminates a creditor's ability to bring an action to establish the debtor's in personam liability. 11 U.S.C. § 524(a). The bankruptcy code provides, in relevant part, that discharge "operates as an *injunction against the commencement or continuation of an action*, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability* of the debtor." *Id.* § 524(a)(2) (emphasis added).

But the discharge does not extinguish the underlying debt itself. *Id.* § 524(a). Instead, it "extinguishes *only* 'the personal liability of the debtor'" on the creditor's claims. *Johnson*, 501 U.S. at 83 (quoting 11 U.S.C. § 524(a)(1)), 85 n.5. Over a century of United States Supreme Court bankruptcy precedent confirms that bankruptcy discharge has no effect on a lien on real property and that "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.* at 83 (citing 11 U.S.C. § 522(c)(2); *Long v. Bullard*, 117 U.S. 617, 6 S. Ct. 917, 29

12

L. Ed. 1004 (1886); *Owen v. Owen,* 500 U.S. 305, 308-09, 111 S. Ct. 1833, 114 L. Ed. 2d 350 (1991); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991)); *see also Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992).

In other words, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson*, 501 U.S. at 84. "After the closing of a bankruptcy case, since a lien passes through bankruptcy unaffected, unless otherwise ordered by the court, a secured creditor has the right to pursue its collateral *in accordance with its agreement* and applicable law, although the debtor's personal liability is discharged." 1 JOAN N. FEENEY, MICHAEL G. WILLIAMSON, & MICHAEL J. STEPAN, BANKRUPTCY LAW MANUAL § 6:53, at 1415 (5th ed. 2021) (emphasis added); *see also id.* (because a secured creditor's lien "passes through bankruptcy unaffected, and is avoided only by order of the court," if the court "takes no action with respect to a secured claim, the secured creditor's entitlement to *receive regular payments continues*, and the secured creditor's in rem right to its collateral is unaffected by the bankruptcy"); *State ex. rel. Biddle v. Superior Ct. of King County*, 63 Wash. 312, 313, 115 P. 307 (1911) (suit to foreclose on a mortgage is a suit in rem).

Further, a bankruptcy discharge does not void or modify the terms of contracts that the debtor entered into prior to bankruptcy. 11 U.S.C. § 524(a). Because a secured creditor's lien "passes through bankruptcy unaffected, and is avoided only by order of the court," if the court "takes no action with respect to a secured claim, the secured creditor's entitlement to *receive regular payments continues*, and the secured creditor's in rem right to its collateral is unaffected by the bankruptcy." 1 FEENEY, WILLIAMSON, & STEPAN, *supra*, § 6:51 (emphasis added); *see also Copper Creek*, 21 Wn. App. 2d at 625 (following discharge, "[t]he debt, the note, and the payment schedule remain unchanged"); *Luu v. Newrez, LLC*, 253 Ariz. 159, 510 P.3d 496, 500 (Ct. App. 2022) ("Owners' bankruptcy discharge did not alter the terms of the promissory note or deed of trust, and Lender maintains its right to enforce its security interest."). Because the underlying debt is not extinguished and the terms of the installment contract are not modified, each installment continues to "become due" under the terms of the contract. *See Luu*, 510 P.3d at 500.

Applying these principles to this case, the Merritts are not entitled to quiet title because the statute of limitations to enforce any of the deeds of trust has not even begun to run. As discussed, it is correct that following a discharge, a creditor can no longer sue a debtor *personally* to recover a debt. But the Merritts ignore the fact that a lien survives bankruptcy, such that discharge has no effect on a

14

No. 100728-1

creditor's ability to pursue an in rem action under the terms of the note and deed of trust. *Johnson*, 501 U.S. at 84. Further, in this case, each promissory note explicitly incorporates the remedy of foreclosure specified in the deeds of trust should the Merritts default. Thus, even though USAA could no longer enforce the promissory note *in personam* against the Merritts following the discharge, the terms of the notes themselves still contain provision for an *in rem* remedy under the deeds of trust. To put it in *Herzog*'s terms, following a bankruptcy discharge, an action can still be brought to recover on subsequent missed installments, but that action is limited to an in rem action. 23 Wn.2d at 388 ("[W]hen recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." (citing Annotation, *When Statute of Limitation Begins To Run against Action To Recover upon Contract Payable in Installments*, 82 A.L.R. 317 (1931)).

    III.    We disavow *Edmundson*'s dicta implying that no future installment payments become due following bankruptcy discharge

The Merritts' argument that a bankruptcy discharge triggers the statute of limitations to enforce a deed of trust relies primarily on dicta from the Court of Appeals' decision in *Edmundson*, 194 Wn. App. 920. We take this opportunity to explain and disavow that dicta.

15

In *Edmundson*, a lender sent a notice of default to homeowners who had stopped making mortgage payments but then sought and obtained a bankruptcy discharge. The question presented was the effect of the homeowners' bankruptcy discharge on the lender's ability to foreclose on the deed of trust. The case is factually complex, but its holdings were simple. First, the court held that the bankruptcy discharge itself did *not* render the deed of trust unenforceable. *Id.* at 925 (quoting *Johnson*, 501 U.S. at 82-23). Second, the court held that the lender had timely initiated foreclosure proceedings. *Id.* at 929-30.

As to the second holding, the court explained that the lender's notice of default was sent within six years of the Edmundsons' first missed installment payment on their mortgage; it held that the notice of default was therefore timely. The court then summed up, "That is all that is required under the circumstances of this case." *Id.* at 930.

Although it had clearly answered the only questions actually at issue in the case, the *Edmundson* court went on to discuss limitations periods for other installment payments the Edmundsons had missed. The court stated that even if the limitations period had run on the Edmundsons' first missed payment, there were several subsequent missed payments prior to the bankruptcy discharge and each of those payments had its own statute of limitations. *Id.* at 930-31. That much is correct. The *Edmundson* court cited *Herzog* for the proposition that the statute of

16

No. 100728-1

limitations accrues on each installment from the date it becomes due and accordingly acknowledged that "the statute accrued on November 1, 2008 for that missed payment only." *Id.* at 931.

However, the *Edmundson* court continued:

> Correspondingly, the statute of limitations for each subsequent monthly payment accrued on the first day of each month after November 1, 2008 *until the Edmundsons no longer had personal liability under the note*. They no longer had such liability as of the date of their bankruptcy discharge, December 31, 2013. Thus, from December 1, 2008 through December 1, 2013, the statute of limitations accrued for each monthly payment under the terms of the note as each payment became due.

*Id*. (emphasis added). *Edmundson* concluded that "[a]ccordingly, each of these missed payments accrued within six years" of the lender's notice of default and that the statute of limitations therefore did not bar enforcement of the deed of trust for those missed payments. *Id*.

This portion of *Edmundson* implies that the statute of limitations stops accruing on missed payments due under an installment contract following a bankruptcy discharge. The court's reasoning rests on the unstated premise that no payments became due after the bankruptcy. But the court provided no citation for that conclusion, which runs counter to the well-established principles of contract law and bankruptcy law discussed above.[7]

---

[7] The conclusion that the statute of limitations begins to run on the right to enforce the deed of trust at the time the last payment became due prior to the discharge appears to have originated in a lender's argument to the court in *Silvers v. U.S. Bank Nat'l Ass'n*,

17

We disavow this dicta in *Edmundson*.[8] As the Court of Appeals explained in today's companion case, *Copper Creek*, *Edmundson*'s "rule" is incorrect because a lien survives bankruptcy discharge; bankruptcy eliminates only the debtor's personal liability on the note, leaving "the debt, the note, and the payment schedule . . . unchanged"; and "[m]issing a payment in an installment note does not trigger the running of the statute of limitations on the portions of the debt that are not yet due or mature." *Copper Creek*, 21 Wn. App. 2d at 625, 619. *Accord Luu*, 510 P.3d at 500 ("Because a bankruptcy discharge does not eliminate the debt under an

15-5480 RJB, 2015 WL 5024173, at *1 (W.D. Wash. Aug. 25, 2015) (court order), a federal case interpreting Washington law. *See Copper Creek*, 21 Wn. App. 2d at 621 n.9; *In re Plastino*, 69 Bankr. Ct. Dec. 177, 2020 WL 7753628, at *3 (Bankr. W.D. Wash. 2020) (mem. decision). The *Silvers* court apparently adopted that conclusion and stated, without citation or explanation, "The statute of limitations on the right to enforce the Deed of Trust began running the last time any payment on the Note was due." *Id*. at *4. Implicit in that holding is the conclusion, also unsupported by authority, that no payments on the note "become due" following a bankruptcy discharge.

[8] We note that despite the lack of authority supporting *Edmundson*'s dicta, some subsequent cases (almost exclusively unpublished federal cases) adopted *Edmundson*'s dicta as a rule and applied or expanded it. *See, e.g.*, *Jarvis v. Fed. Nat'l Mortg. Ass'n*, No. C16-5194-RBL, 2017 WL 1438040 (W.D. Wash. Apr. 24, 2017) (court order), *aff'd sub nom. Jarvis v. Fannie Mae*, 726 F. App'x 666 (9th Cir. 2018) (mem.); *Hernandez v. Franklin Credit Mgmt. Corp.*, No. BR 18-01159-TWD, 2019 WL 3804138 (W.D. Wash. Aug. 13, 2019) (court order), *aff'd sub nom. In re Hernandez*, 820 F. App'x 593 (9th Cir. 2020) (mem.); *Taylor v. PNC Bank, Nat'l Ass'n*, No. C19-1142-JCC, 2020 WL 4431465, *3-4 (W.D. Wash. July 31, 2020) (court order), *appeal dismissed sub nom. Taylor v. PNC Bank, N.A.*, No. 20-35766, 2020 WL 7048194 (9th Cir. 2020); *Spesock v. U.S. Bank NA*, No. C18-0092JLR, 2018 WL 4613163, at *4 (W.D. Wash. Sept. 26, 2018) (court order); *see also Luv v. W. Coast Servicing, Inc.*, No. 81991-7-I, (Wash. Ct. App. Aug. 2, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/819917.pdf, *review denied*, 198 Wn.2d 1035 (2022); *Silvernagel v. US Bank Nat'l Ass'n*, 2021 COA 128, ¶¶ 28-29, 503 P.3d 165, 171, *rev'd on other grounds*, 2023 CO 17, 528 P.3d 163.

installment contract, each installment continues to become due under the original contract. Though the discharge injunction bars the lender under that contract from collecting on those installments against the debtor personally, the installments remain operative to inform the parties' rights regarding the use of *in rem* remedies against the security."); *Diaz v. BBVA USA*, 252 Ariz. 436, 442, 504 P.3d 945 (Ct. App. 2022); *Bank of N.Y. Mellon v. Holmes*, No. A-1-CA-38114, 2021 WL 2557793, at *3 (unpublished) (N.M. Ct. App. June 22, 2021) (mem.); *Bank of N.Y. Mellon v. SFR Invs. Pool 1*, No. 2:18-cv-01375-JAD-VCF, 2022 WL 4466181 (D. Nev. Sept. 26, 2022); *In re Plastino*, 69 Bankr. Ct. Dec. 177, 2020 WL 7753628, at *3 (Bankr. W.D. Wash. 2020); *Alvarez v. Bank of Am. Corp.*, No. 14-CV-60009-KAM, 2015 WL 12670510, at *3 (S.D. Fla. Apr. 17, 2015) (court order); *Wilmington Sav. Fund Soc'y v. Fernandez*, 179 A.D.3d 79, 113 N.Y.S.3d 443 (2019); *Kabler v. HSBC Bank USA NA*, No. 16cv01738, 2018 WL 1384551, at *5 (Kan. Dist. Ct. 2018) (mem. decision); *Can Fin., LLC v. Krazmien*, 253 So.3d 8 (Fla. Dist. Ct. App. 2018); *Mcintosh v. Fed. Nat'l Mortg. Ass'n*, 15 CV 8073 (VB), 2016 WL 4083434, at *4 (S.D.N.Y. July 25, 2016) (court order).

To sum up, the bankruptcy discharge renders an in personam action to recover the debt unenforceable. 11 U.S.C. § 524(a). But the creditor retains the right to bring an in rem action to recover each unpaid installment payment as it comes due under the terms of the note and deed of trust. *Johnson*, 501 U.S. at 84.

19

No. 100728-1

Here, nothing in the bankruptcy record indicates that the terms of the Merritts'
notes or deeds of trust were ever altered. Because the notes and deeds of trust in
this case have not been avoided or modified, their terms remain in place: the
payment schedule remains unchanged, payments still become due under the terms
of the contract, and the maturity date remains the same. *Copper Creek*, 21 Wn.
App. 2d at 625; *Luu*, 253 Ariz. 159. USAA's in rem remedy remains available
under the terms of the notes each time a payment comes due and the Merritts
default, up until the final payment comes due at the maturity date. The final statute
of limitations to enforce the deeds of trust will begin to run at each loan's maturity
date. *Merceri*, 4 Wn. App. 2d at 760. None of the loans have yet matured, so none
of the statutes of limitations have begun to run.

Thus, the trial court's grant of summary judgment in favor of USAA was
proper. The Merritts have not shown entitlement to quiet title under RCW 7.28.300
as a matter of law because an action to foreclose on the deeds of trust is not barred
by the statute of limitations.

IV.    USAA is entitled to attorney fees

Both the Merritts and USAA seek attorney fees. Pet. for Rev. at 24; Resp't
USAA's Answer at 19. Here, the promissory notes (1 CP at 37; 2 CP at 324; 3 CP
at 441; 4 CP at 767) and deeds of trust (1 CP at 164; 2 CP at 263; 3 CP at 482; 4
CP at 852, 843) contain terms entitling USAA to recover reasonable costs and fees

20

incurred in protecting its lien interests. Further, RCW 4.84.330 provides that the prevailing party in any action to enforce the provisions of a contract "shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." *See also* RAP 18.1. Since USAA is the prevailing party in this case, USAA is entitled to reasonable attorney fees and costs incurred in protecting its lien interests.

CONCLUSION

We affirm the Court of Appeals and the trial court and hold that bankruptcy discharge does not trigger the statute of limitations to enforce a deed of trust. We disavow the portion of *Edmundson* that implied otherwise. We award reasonable attorney fees to USAA and affirm the award of attorney fees to USAA below.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100728-1

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Yu, J.

Johnson, J.

Montoya-Lewis, J.

Madsen, J.

Whitener, J.

Stephens, J.

22