IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parenting & Support of: | ) ) ) | No. 40635-1-III |
| P.† | ) ) | |
| MICHAEL LEE PHELPS, | ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| AMANDA WEBER, | ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Amanda Weber appeals after the trial court

entered orders consistent with Michael Phelps' amended petition for a major modification

of the parenting plan. Ms. Weber argues the trial court lacked authority to make

a major modification because Mr. Phelps never filed a proper petition. We disagree.

The trial court initially struck Mr. Phelps' amended petition for a major

modification because it contained a handwritten interlineation. Mr. Phelps later served

that amended petition on Ms. Weber. Months later at trial, the trial court overruled Ms.

Weber's procedural objection and impliedly reversed its earlier order that had struck the

pleading. Because Ms. Weber knew full well what issues would be tried and was not

_____

† To protect the privacy interests of the minor child, we use their initial throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/ appellate_trial_courts.

prejudiced and because the amended petition was deemed filed, we conclude that the trial court did not abuse its discretion.

FACTS

In 2019, Ms. Weber and Mr. Phelps entered a final parenting plan for their daughter P. That plan divided the daughter's residential time somewhat equally between the parents. Later that year, Ms. Weber sought to modify the residential schedule because she believed Mr. Phelps was making false claims of child abuse. Mr. Phelps denied this and claimed Ms. Weber's father was sexually abusing P, their daughter. The parties agreed to an ex parte restraining order against Ms. Weber's father, which was later modified to allow supervised contact with P.

The Washington Department of Children, Youth, and Families (DCYF) investigated Mr. Phelps' claims. Its investigation concluded that the claims were unfounded. Mr. Phelps continued to assert his concerns about Ms. Weber's father. Mr. Phelps claimed that P would cry before going to her mother's house and that P had told him that Ms. Weber's father had hurt her and stuck his fingers in her. He also raised concerns that Ms. Weber yells at, spanks, and neglects P.

Ms. Weber claimed that DCYF correctly found that the claims made against her father were unfounded and that he passed two polygraph exams during the investigation. She claimed that Mr. Phelps is abusing the supervised contact restrictions against her

father by interpreting them unreasonably strictly. According to Ms. Weber, Mr. Phelps and his wife were telling P that she was molested despite evidence to the contrary and were "twisting the evidence" to make Ms. Weber look bad. Clerk's Papers (CP) at 9.

A guardian ad litem (GAL) observed Ms. Weber and P in Ms. Weber's home and noted, P "appeared extremely bonded with her grandfather. She was teasing him and being playful. They had plans to watch Frozen 2 after [the] Guardian left." CP at 11. The GAL concluded that P "seemed extremely bonded and comfortable in the home with her mother and grandfather." CP at 11. The GAL ultimately concluded that "[w]hile DCYF has made a finding of 'unfounded' that does not mean that Mr. Phelps was wrong to intervene. Mr. Phelps took the allegations of his daughter seriously and took appropriate actions to protect the child." CP at 12. Nevertheless, "[t]he fact the DCYF has made a finding of 'Unfounded' and [my] witnessed interaction between Mr. Weber and the child causes this Guardian ad Litem to not have any concerns [about] Mr. Weber." CP at 12.

On May 27, 2020, the trial court entered an agreed final parenting plan for P. The plan did not place limitations on either parent and directed the parents to jointly make major decisions for her. Ms. Weber was designated the primary residential parent. P would alternate weeks living with Ms. Weber and Mr. Phelps, with some variation for holidays.

On March 21, 2022, Mr. Phelps petitioned to modify the parenting plan. The petition was for a minor modification and sought to add provisions intended to protect P from her grandfather and her mother's boyfriend.

In July 2022, the court entered a temporary family law order. It ordered that P have no contact with her mother's boyfriend and that no information about P be shared with him. It allowed Mr. Weber to have contact with P only while he was supervised by Ms. Weber. It also prevented Mr. Weber from being present in situations where P was not dressed.

In November 2022, the court entered another temporary family law order. The order stated that the court would appoint a new GAL to investigate and report on Mr. Phelps' claims. Specifically, the new GAL was to investigate Mr. Phelps' claims of physical or sexual abuse of P, as well as the DCYF investigation that determined the allegations were unfounded. Later, the court appointed Shannon Story as the new GAL.

On May 16, 2023, soon after the new GAL filed her report, Mr. Phelps filed a motion to amend his petition for a minor modification. The amended petition sought a major modification so that P would live mostly with him. The amended petition outlined the new GAL's recent findings as the factual bases for the petition. The motion also attached the proposed amended petition. Under the preprinted form's paragraph 7, "Request for minor change," Mr. Phelps added a handwritten sentence: "Requests remain

as set forth in original petition." CP at 187. On May 26, the trial court granted Mr.

Phelps' motion to amend so that both the minor and major modification requests could be

tried and ruled on.

On May 26, 2023, Mr. Phelps filed the amended petition that was approved by the

court. Soon after this, Ms. Weber moved to strike the amended petition. She argued the

amended petition contained a handwritten interlineation that violated CR 15(e). At the

motion hearing, Mr. Phelps did not object to having the pleading struck, so the court

ordered it struck.

On January 8, 2024, Mr. Phelps served Ms. Weber with a copy of the same

amended petition that had been struck. Two months later, Mr. Phelps filed an ex parte

motion for adequate cause to proceed to trial on his amended petition, asserting that an

order was appropriate because Ms. Weber had failed to answer the petition. The trial

court signed the order presented by Mr. Phelps and set a trial date for April 8, 2024.

Ms. Weber moved for reconsideration of the trial court's order finding adequate cause.

She argued there was no petition under which the court could grant adequate cause for

trial of the requested major modification given that Mr. Phelps had failed to file a

corrected amended petition. The court expeditiously denied the motion without

requesting a response.

Trial began on April 8, 2024. Ms. Weber objected almost immediately to the proceeding because she believed the court lacked authority to consider a major modification, given that Mr. Phelps still had not filed a corrected amended petition. The trial court responded:

> Well, I think that—and potentially, that wasn't clear when we continued the case in January.[1] But my intention was that that petition would be revised—re-served, and that's why we continued the case in the first place. Because why else would we have continued the case for her to do that and then—and appear on day of trial arguing about it.
>     I find at this point that the argument is disingenuous. And I have made my ruling. And we're done talking about it and we're going to start trial.

Rep. of Proc. (Apr. 8, 2024) at 13-14.

Despite the court having made its ruling, argument from Ms. Weber continued her procedural objection. The trial court then noted that the May 26, 2023 amended petition it had struck was still in the file, had been served on Ms. Weber on January 8, 2024, and for several months the parties knew what issues would be tried. It found that Ms. Weber would not be prejudiced by trying the issues set forth in the May 26, 2023 amended petition and overruled her objection.

---

[1] Neither party provided us any record of the January hearing.

After the parties presented their evidence, including testimony from the new GAL that supported the amended petition, the trial court ruled in favor of Mr. Phelps. In its written findings, the court further addressed Ms. Weber's procedural objection:

> This Court . . . finds that the errors surrounding the Amended Petition were not substantial errors but were procedural errors that can be cured. Respondent had notice of the issues raised in the Amended Petition as early as May 2023, and was aware that the Court intended to proceed under the minor and major modifications as of January 8, 2024, at the latest. Respondent had adequate and full notice of the issues in front of the Court for trial. Any notice issues were cured when the Court granted a continuance in January and Mr. Phelps had Ms. Weber served with that Petition. Failing to re-file the Petition was a procedural error, not an error fatal to the case.

CP at 295. The court also found:

> Ms. Weber's poor judgment, family dynamics, cumulative choices, and failure to protect [P] have led to a detrimental environment in her household for [P], and that a change in custody outweighs the harm resulting from any change to the schedule.

CP at 295. It further found that although there have been no additional investigations or concerns raised, P "continues to indicate to her counselor that it happened and by Ms. Weber's own testimony has had periods of time when she has been uncomfortable around or fearful of her grandfather." CP at 295. The court was "incredulous over Ms. Weber's incredibly poor judgment." CP at 297.

7

Based on its findings, the court entered an order that set various protections for P against men in Ms. Weber's life. Ms. Weber filed a motion for reconsideration, which the court denied.

Ms. Weber appealed to this court.

ANALYSIS

Ms. Weber argues the trial court abused its discretion by granting Mr. Phelps a major modification of the parenting plan without him first having filed a proper petition.

We review a trial court's decision concerning the welfare of children for an abuse of discretion. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A court abuses its discretion when its decision is manifestly unreasonable, i.e., when the decision is outside the range of acceptable choices, given the facts and the law. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

Actions for a major modification of a parenting plan must be commenced by filing and service of a summons and a petition. CR 4.1. Ms. Weber cites cases that support her position that a trial court abuses its discretion by proceeding forward with a major modification of a parenting plan when a petition for the same has not been filed. We accept this premise as true.

Here, Mr. Phelps initially filed a petition requesting only a minor modification. He later filed an amended petition requesting a major modification, including the relief he

had sought in his initial petition, but the court struck it because it contained a handwritten interlineation.  Ms. Weber argues:

> [1] CR 15 is clear that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party[.]" [2] [T]here certainly was not any agreement established between the parties in which Appellant consented to Respondent amending his petition and [3] there was no approval by the court for this action.

Appellant's Reply Br. at 8-9.[2]  Ms. Weber's first two points are certainly correct, but her third point is not.

CR 15(e) states: "Interlineations.  No amendments shall be made to any pleading by erasing or adding words to the original on file, without first obtaining leave of court." (Boldface omitted.)  It was under this rule that the trial court initially struck Mr. Phelps' amended petition.  However, a judge may reverse or modify a pretrial ruling or order at any time prior to the entry of judgment.  *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 37, 864 P.2d 921 (1993).  Here, the trial court's ruling—that Mr. Phelps' May 26, 2023 amended petition was sufficient for proceeding to trial—impliedly reversed its earlier order striking that pleading.

The trial court had authority to reverse its prior order, had authority under CR 15(e) to allow the handwritten interlineation, and found that Ms. Weber would not be

---

[2] Ms. Weber did not include page numbers in her reply brief.  The page numbers reflected above start after the brief's table of contents and table of authorities.

prejudiced by proceeding to trial. This finding is not disputed. Unchallenged findings are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992); *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

We conclude the trial court did not abuse its discretion when it impliedly reversed its order striking the amended petition. Given that the amended petition was filed nearly one year before trial and that Mr. Phelps had Ms. Weber served with the amended petition three months before trial, we discern no abuse of discretion in the trial court's April 8, 2024 ruling. We affirm its decision to proceed to trial based on the amended petition.[3]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Cooney, J.

Murphy, J.

---

[3] Ms. Weber additionally argues the trial court abused its discretion by failing to apply res judicata to the allegations against Mr. Weber and describes Mr. Weber as cleared from wrongdoing by the initial GAL report and two polygraphs. She includes no analysis or case citations in her short and conclusory argument. We decline to review undeveloped arguments. *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 787, 239 P.3d 1109 (2010).